# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLOS LOPEZ**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-2002 (RMU) |
| | ) |
| **EXECUTIVE OFFICE FOR THE** | ) |
| **UNITED STATES ATTORNEYS**, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Executive Office for the United States Attorneys ("EOUSA"), Department of

Justice ("DOJ") by and through the U.S. Attorney for the District of Columbia, respectfully

moves this Court for summary judgment on the grounds that there are no material facts in dispute

and that defendant is entitled to judgment in its favor as a matter of law.  Fed. R. Civ. P. 56.  In

support of its  motion, defendant submits a Memorandum of Points and Authorities, a Statement

of Material Facts Not In Dispute, the declaration of Karen Finnegan, a Vaughn Index and

exhibits thereto.

Plaintiff should take notice that any factual assertions contained in the accompanying

affidavits and other attachments in support of defendant's motion will be accepted by the Court

as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting

the assertions in defendant's attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992),

Local Rule 7.1, and Fed. R. Civ. P. 56(e).  Rule 56(e) provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of

all papers or parts thereof referred to in an affidavit shall be
attached thereto or served therewith.  The court may permit
affidavits to be supplemented or opposed by depositions, answers
to interrogatories, or further affidavits.  When a motion for
summary judgment is made and supported as provided in this rule,
an adverse party may not rest upon the mere allegations or denials
of the adverse party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set forth
specific facts showing that there is a genuine issue for trial.  If the
adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

                              Respectfully submitted,


                              __/s/_____
                              JEFFREY A. TAYLOR,  BAR #498610
                              United States Attorney


                              __/s/_____
                              RUDOLPH CONTRERAS, BAR #498610
                              Assistant United States Attorney


                              __/s/_____
                              CHARLOTTE A. ABEL, D.C. BAR #388582
                              Assistant United States Attorney
                              United States Attorney's Office
                              Civil Division
                              555 Fourth Street N.W.
                              Washington, D.C.  20530
                              (202) 307-2332

                              JAMES PAXTON
                              Paralegal Specialist

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLOS LOPEZ**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 07-2002 (RMU) |
| ) | |
| **EXECUTIVE OFFICE FOR THE** ) | |
| **UNITED STATES ATTORNEYS**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, and pertains to the processing of plaintiff's FOIA request by the Defendant Executive Office for the United States Attorneys ("EOUSA"). The attached declaration of Karen Finnegan, a Vaughn Index, and exhibits attached hereto describe EOUSA's responses to plaintiff's FOIA request.

### Factual and Procedural Background

On August 14, 2006, EOUSA received a copy of Plaintiff's FOIA and Privacy Act request dated August 7, 2006, which sought access to the following information:

> "all and any records both maintained and nonmaintained on file relating to my arrest and prosecution on federal narcotic and firearm violations in the State of New Hampshire... In particular, I seek copies of Special Agent (SA) Steven Story, SA Norman Houle, and SA Edward Bals' investigation reports made on this matter."

Plaintiff identified the court docket number associated with his criminal case as "01-79-01-M" and stated that he was arrested on July 25, 2001. Declaration of Karen Finnegan ("Finnegan

Decl.") ¶ 7, Exhibit B.  In two letters dated August 29, 2006, EOUSA acknowledged receipt of palitiff's request and assigned it request number 06-2619, and advised him that some of the information that he requested most likely originated with the Drug Enforcement Administration ("DEA") and directed him to contact DEA at the address provided.  Id.  ¶ 8. See Exhibit C.  In this letter EOUSA also advised plaintiff that he could file an administrative appeal with the U.S. Department of Justice, Office of Information and Privacy ("OIP"), 1425 New York Avenue, NW, Washington, D.C.  20530-0001.  Id.  The second August 29 letter identified the District of New Hampshire as the location where a search would be conducted for responsive records and advised plaintiff that by making the request he had agreed to pay fees up to $25 pursuant to 28 C.F.R. § 16.3(c), and that if processing fees exceeded this amount EOUSA would notify him of the estimated fee amount.  Id.  ¶ 9. See Exhibit D.

By letter dated September 7, 2006, plaintiff expressed his willingness to pay for all costs associated with his request.  Finnegan Decl. ¶ 10. See Exhibit E.  By letter dated April 19, 2007, plaintiff provided EOUSA with his new mailing address and inquired into the status of his request.  Id.  ¶ 11. See Exhibit F.  In a letter dated August 14, 2007, plaintiff inquired into the status of the processing of his request.  Id.  ¶ 12. See Exhibit G.  EOUSA advise plaintiff in a letter dated December 21, 2007, that 305 pages of material were being released in full, 72 pages of material were being released in part and 276 pages of material were being withheld in full.  Id. ¶ 13.  See Exhibit H.  EOUSA also advised plaintiff that certain information was being withheld pursuant to 5 U.S.C. §§ 552(b)(3), F.R.C.P. 6(e) and 5 U.S.C. App. 4 § 107(a), (b)(5), (b)(7)(C),and 5 U.S.C. § 552a(j)(2).  Id.  In this letter, EOUSA advised plaintiff that a copy of his Presentence Investigation Report ("PSR") was contained in the USAO's criminal case file.  Id.

EOUSA also advised that in light of the fact that plaintiff was an inmate in a Federal correctional facility access to his PSR would be granted in accordance with the policies of the Federal Bureau of Prisons.  Id.  Accordingly, EOUSA advised plaintiff to contact his Unit Team with regard to accessing his PSR.  Id.  EOUSA also advised plaintiff that processing fees in the amount of $140.10 was due and that payment should be made within 30 days of the date of the letter.  Id.  Finally, EOUSA advised plaintiff that he could file an administrative appeal with OIP.  Id.

In a second letter dated December 21, 2007,  EOUSA referred  305 pages of responsive material to DEA, 6 pages of responsive material to the Federal Bureau of Investigation, 2 pages of responsive material to the Department of Veterans Affairs, 9 pages of responsive material to the Bureau of Alcohol, Tobacco, and Firearms, and 5 pages of responsive material to the U.S. Probation Office for processing and direct response to plaintiff.  Finnegan Decl. ¶ 14.  See Exhibit I.

EOUSA has no record of receiving payment of the processing fees assessed in its December 21, 2007, letter to Mr. Lopez.  Finnegan Decl. ¶ 15.

By letter dated January 31, 2008, EOUSA made a supplemental release of 6 pages of material to Mr. Lopez.  Finnegan Decl. ¶ 16.  EOUSA made this supplemental release because certain third party information was inadvertently disclosed in EOUSA's prior release of material to Mr. Lopez.  Id.  EOUSA also addressed instances of inconsistent processing of information in this supplemental release.  Id.

## ARGUMENT

**I.       EOUSA is Entitled to Summary Judgment**

**A.       Standard for Summary Judgment**

FOIA cases are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).[1] "Summary judgment is available to the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations under FOIA." Miller v. U.S. Dept. of State, 779 F.2d 1378, 1382 (8th Cir. 1985.) Agencies establish that all of their obligations under the FOIA have been met through declarations and Vaughn indexes. Thus, when the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

Because the declaration of Ms. Finnegan demonstrates that EOUSA has met its obligation under the FOIA, and the pleadings, supplemented by the declaration, Vaughn index, and exhibits, show no genuine issue as to any material fact, summary judgment should be granted to defendant as a matter of law. Id.

## B.    EOUSA's Search Was Adequate

### 1.    Nature of Search Required

The agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records. Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993). The

---

[1] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980)

issue is not whether there might exist any other records possibly responsive to the request, but rather whether the search for responsive records was adequate. Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); Nation Magazine v. U. S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). "'[T]he search need only be reasonable; it does not have to be exhaustive.'" Miller v. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985), citing National Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973). Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, 71 F.3d at 892 n.7.

To satisfy its search obligations, an agency should search those offices or records systems reasonably likely to have responsive records. Oglesby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Knight v. Food and Drug Administration, 938 F. Supp. 710, 716 (D. Kan. 1996). It should show that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68; see also SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).

Once the agency establishes the adequacy of its search, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. It is insufficient for a requester to attempt to rebut agency affidavits with purely speculative claims. See Carney v. Dept. of Justice, 19 F.3d 807, 813 (2nd Cir. 1994); SafeCard, 926 at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

As demonstrated below, the EOUSA conducted an adequate search.

**2. Details of EOUSA's Search Procedures**

Records responsive to plaintiff's request are located in the USAO for the District of New Hampshire ("DNH"). Finnegan Decl. ¶ 17. In the USAO DNH, the responsive records are maintained in the Criminal Case File System (Justice/USA-007) and in the criminal case file captioned U.S. v. Carlos Lopez, CR. No. 01-79-M. Id. The USAO DNH prosecuted plaintiff for violations of federal drug and firearms laws. Id.

Upon receipt of plaintiff's FOIA/PA request, the USAO DNH conducted a systematic search to determine the location of any and all files relating to him. Finnegan Decl. ¶ 18. The computer case tracking systems, the Legal Information Office Network System ("LIONS") and the Tracking Assistance for the Legal Office Network ("TALON") were used to determine all possible locations of responsive files. In searching the LIONS database the criminal defendant's name, USAO file jacket number, and the district court case number are used as search terms. Id. The criminal defendant's name is used to conduct a search of the TALON database for retrieval of information. Id. After completing the computer search to determine all possible record locations in the Criminal and/or Civil Divisions, the FOIA contact directed that the indexes for the criminal, civil, and asset forfeiture cases be searched for responsive records, as well as the Federal Records Center Files Index. Id. Further, the FOIA contact requested that the staff of the USAO DNH determine if they maintained any responsive files. Id. The only responsive records located in the USAO DNH were contained in plaintiff's criminal case file. Id.

**C.     The Records Plaintiff Requested Are Exempt From the Privacy Act's Disclosure Provisions.**

-6-

Subsection (j)(2) of the Privacy Act exempts the following records from mandatory disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of ...(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

The USAO's Criminal Case Files (Justice/USA-007) are contained in a Privacy Act System of Records. Finnegan Decl. ¶ 19. The Attorney General has promulgated rules exempting these records from the Privacy Act's access provisions as authorized by 5 U.S.C.§ 552a(j)(2), which appear at 28 C.F.R. § 16.81. Id. Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws. Id. The mission of the USAO is to enforce criminal and civil laws and defend the interests of the United States, to provide Federal leadership in preventing and controlling crime, and to seek just punishment for those found guilty of unlawful behavior. Id.

The entire responsive case file pertains to the criminal investigation of Mr. Lopez for violations of federal drug and firearms laws, and was compiled for criminal law enforcement purposes by the USAO for the District of New Hampshire, which performs as its principal function activities related to the enforcement of criminal laws. Finnegan Decl. ¶ 20.

Accordingly, this file is exempt from the access provisions of the Privacy Act pursuant to 5

U.S.C. § 552a(j)(2).  Id.

**D.      EOUSA Properly Applied Exemption 3 in conjunction with Fed. R. Crim. P. 6(e)**

Title 5, United States Code, Section 552 (b)(3) (hereinafter Exemption 3) allows the

withholding of information protected from disclosure by another statute if that statute

> (A) requires that the matters be withheld from the public in such a
> way as to leave no discretion on the issue, or (B) establishes
> particular criteria for withholding or refers to particular types of
> matters to be withheld.

5 U.S.C. § 552 (b)(3).

While records may be withheld under the authority of another statute pursuant to

Exemption 3 if and only if that statute meets its requirements, the breadth and reach of the

disclosure prohibition does not necessarily have to be found on the face of the statute in question.

The statute must at least explicitly deal with public disclosure.  Reporters Comm. for Freedom of

the Press v. U.S. Dept. of Justice, 816 F.2d 730, 734-36 (D.C. Cir. 1987), *modified on other*

*grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989).  Once an

agency establishes that a statute is a nondisclosure statute and that it meets at least one of the

requirements of Exemption 3, it must also establish that the records at issue fall within the

withholding provision of the nondisclosure statute.  Fund for Constitutional Govt. v. Nat'l

Archives & Records Serv., 656 F.2d 856, 866-69 (D.C. Cir. 1981).  Typically, this requires an

interpretation of the nondisclosure statute.  See Washington Post Co. v. Dept. of Justice, 863

F.2d 96, 100 (D.C. Cir. 1988).

-8-

Rule 6(e) explicitly bars disclosure of "matters occurring before the grand jury," and serves to preserve the secrecy of grand jury proceedings.[2]  It has long been recognized that Fed. R. Crim. P. 6(e) qualifies as an Exemption 3 statute.  See, e.g., Church of Scientology International v. U.S. Dept. of Justice, 30 F.3d 224, 235 (1st Cir. 1994); Fund for Constitutional Government v. National Archives and Records Service, 656 F.2d 856, 867-68 (D.C. Cir. 1981) (soundly rejecting argument that Federal Rules of Criminal Procedure are not "statutes" for Exemption 3 purposes).

Rule 6(e) is precise in its description of the circumstances under which grand jury information may be disclosed, none of which are applicable here.  See Fed. R. Crim. P. 6(e)(3).  First, disclosure may be made to a government attorney "for use in the performance of such attorney's duty."  Fed. R. Crim. P. 6(e)(3)(A)(i).  Second, limited disclosure may be made to "government personnel" deemed necessary by a federal government attorney to assist federal government counsel in the "performance of such attorney's duty to enforce federal criminal law."  Fed. R. Crim. P. 6(e)(3)(A)(ii).  Three other exceptions permit disclosure only by court order.  See Fed. R. Crim. P. 6(e)(3)(C)(i),(ii), and (iv).  A final exception permits a federal government attorney to disclose otherwise secret material "to another federal grand jury."  Fed. R. Crim. P.

---

[2]        In relevant part, Rule 6(e)(2)(B) provides:
(2) Secrecy . . .
(B) Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:  A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

Rule 6(e)(7) provides:
. . . . (7) Contempt. A knowing violation of Rule 6 may be punished as a contempt of court.

6(e)(3)(C)(iii).  Thus, Rule 6(e) establishes particular criteria as to the withholding of

information.  None of the criteria are applicable in this case.  Because none of the Rule 6(e)

exceptions apply, the rule's "ban on disclosure is for FOIA purposes absolute and falls within

subpart (A) of Exemption 3."  Fund for Constitutional Government, 656 F.2d at 868.

      In order to apply Fed. R. Crim. P. 6(e) with Exemption 3 it is necessary to establish a

nexus between the release of the information and the divulging of a protected aspect of the grand

jury's investigation.  Senate of Puerto Rico, 823 F.2d at 584.  "The touchstone is whether

disclosure would 'tend to reveal some secret aspect of the grand jury's investigation,'[such as]

'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the

investigation, the deliberations or questions of jurors, and the like.'"  Senate of Puerto Rico, 823

F.2d at 582, citing SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980).  In

order to effectuate Rule 6(e)'s objectives, "the scope of the secrecy is necessarily broad."  Id.

      EOUSA has invoked Exemption 3, Federal Rule of Criminal Procedure 6(e) to withhold

the names of grand jury witnesses, information that may reveal the scope and direction of a grand

jury proceeding, grand jury subpoenas and exhibits, and transcripts of grand jury testimony.

Finnegan Decl. ¶ 22.  In addition, EOUSA has asserted Exemption 3, 5 U.S.C. App. 4 § 107(a),

the Ethics in Government Act of 1978, to withhold confidential Conflict of Interest Certifications

completed by AUSAs.  Id.  EOUSA applied Rule 6(e) in conjunction with Exemption 3 to

withhold grand jury transcripts, subpoenas, and exhibits associated with a grand jury proceeding.

Finnegan Decl. ¶ 23.

      EOUSA withheld certain records pursuant to FRCP 6(e) and Exemption 3 because release

of grand jury subpoenas and exhibits, and transcripts of testimony would reveal the scope of the

grand jury proceeding and the direction of the investigation by providing the identities of the

targets of the investigation, the source of the evidence, as well as the actual evidence produced

before the grand jury.  Finnegan Decl. ¶ 24.  Release of this information would provide the

requester with the scope of the grand jury's investigation by setting forth where the government

sought to find evidence to develop its case, how the government developed its case, and who the

government relied upon to develop the elements of crimes.  Id.  EOUSA has asserted Exemption

3, FRCP 6(e) for all grand jury materials and in Document 22 listed in Exhibit A.

### E.     5 U.S.C. App. 4 § 107(a) (ETHICS IN GOVERNMENT ACT OF 1978)

5 U.S.C. App. 4 § 107(a)(1), Title 1 of the Ethics in Government Act of 1978, requires

certain government officers and employees to file confidential financial disclosure reports.  The

confidential financial reporting system is designed to complement the public reporting system

and to guarantee the "efficient and honest operation of the Government" by employees, "whose

Government duties involve the exercise of significant discretion in certain sensitive areas . . . and

to facilitate the review of possible conflicts of interest."  5 C.F.R.§ 2634.901(a).  These reports

also assist an agency in "administering its ethics program and counseling its employees."  Id.

These reports are confidential and shall not be disclosed to the public.  See 5 U.S.C.

App. 4 § 107(a)(2).  Further, 5 C.F.R. § 2634.604(b), specifically provides that "[n]o member of

the public shall have access to such reports, except pursuant to an order of a Federal court or

otherwise provided under the Privacy Act."  The USAO DNH requires AUSAs to report this

confidential financial information on a Conflict of Interest Certification form.

EOUSA has asserted Exemption 3 and 5 U.S.C. App. 4 § 107(a) to withhold confidential

Conflict of Interest Certification forms because this statute mandates the withholding. Finnegan Decl. ¶ 27. See Glascoe v. U.S. Department of Justice, 205 WL 1139269 (D.D.C. 2005). Furthermore, a Federal court has not ordered the release of these documents and the Privacy Act does not provide for release in this case. Id. EOUSA applied 5 U.S.C. App. 4 § 107(a) in conjunction with Exemption 3 to the following documents listed in Exhibit A: 10-12, and 29. Id.

### F.    EOUSA Properly Applied Exemption 5

Title 5, United States Code, § 552 (b)(5) ("Exemption 5") protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, this exemption protects documents normally privileged in the civil discovery context. FTC v. Grolier Inc., 462 U.S. 19, 26 (1983); NLRB v. Sears Roebuck & Co., 421 U.S. 132, 149 (1975). This section of the FOIA incorporates the attorney-client privilege, the attorney work-product doctrine and the executive "deliberative process privilege that protects candid internal discussions of legal or policy matters." Maricopa Audubon Soc'y v. U.S. Forrest Serv., 108 F3. 1082, 1084 n. 1 (9th Cir. 1997).

EOUSA asserted Exemption 5 to protect: (1) hand-written notes taken by an Assistant U.S. Attorney ("AUSA") or at his or her direction during the plaintiff's pre-trial hearing(s) and trial, in witness interviews, during jury selection, and pertaining to evidence gathered in the criminal investigation of plaintiff; (2) copies of evidence gathered by the government; (3) draft jury verdict forms, a draft notice filing, draft jury instructions, and a draft indictment; (4) internal communications between employees of the USAO regarding the plaintiff's prosecution; and (5) the prosecutor's legal research all pursuant to the attorney work product and the deliberative process privileges. Finnegan Decl. ¶ 29. EOUSA asserted Exemption 5 in conjunction with

these privileges in the following documents listed in Exhibit A: 1, 8, 13-18, 20-21, 23-24, 26-28, 30-31, 33-36, 88-90, 94-99.  Id.  In addition, EOUSA has asserted Exemption 5, attorney work product and deliberative process privileges to protect Grand Jury exhibits, subpoenas and certain information contained in the Grand Jury transcripts.  Id.

### 1.  The Attorney Work-Product Privilege

The attorney work-product privilege protects "the files and the mental impressions of an attorney... reflected, of course, in interviews, statements, memoranda, correspondence, briefs ... and countless other tangible and intangible ways prepared in anticipation of litigation," particularly those documents which set forth the attorney's theory of the case and litigation strategy.  A. Michael's Piano, Inc. v. Federal Trade Comm'n, 18 F.3d 138, 146 (2d Cir. 1994) (citing Hickman v. Taylor, 329 U.S. at 509-11).

In order to qualify for the protection of the attorney work-product privilege, a document must have been created by or at the direction of an attorney in anticipation of litigation.  The litigation which is anticipated need not be imminent, as long as the motivating factor behind the creation of the document was to aid in possible future litigation.  U.S. v. Davis, 636 F. 2d 1028, 1040 (5th Cir. 1981); A. Michael's Piano, 18 F3d. At 146; Hickman, 329 U.S. at 511.

The protection of Exemption 5 as to the attorney work-product privilege, as well as the other privileges, are not limited to civil litigation.  Rather courts have either explicitly or implicitly recognized that the work-product doctrine is applicable to criminal prosecutions when the courts have upheld the nondisclosure of documents prepared in the context of a criminal investigation/prosecution pursuant to the (b)(5) Exemption. See  Antonelli v. Sullivan, 732 F2d 560, 561 (7th Cir. 1983); Ferri v. U.S. Dept. of Justice, 573 F. Supp. 852, n. 33 (W.D.Pa. 1983);

Harvey v. U.S. Dept. of Justice, 747 F. Supp. 29,37 (D.D.C. 1990); Dunham v. U.S. Dept. of Justice, 829 F.Supp. 428, 433 (D.D.C. 1993); Jimenez v. FBI, 938 F.Supp. 21, 28, (D.D.C. 1996). The courts have held that "if material is exempt from FOIA disclosure because of the attorney work-product privilege, the exemption does not terminate at the close of the litigation for which the material was prepared." Grove v. Dept. of Justice, et,al., 802 F. Supp. 506,514 (D.D.C. 1992).

EOUSA invoked the attorney work product privilege to protect records or portions of records that reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to plaintiff's criminal case. Finnegan Decl.¶ 30. The relevant records were prepared by or at the request or direction of an AUSA, in anticipation of or during litigation. Id. The substance of the records withheld in part or in their entirety are exempt from disclosure pursuant to these privileges because they would reveal the details of an AUSA's preparation for a criminal prosecution. Id. EOUSA has asserted Exemption 5 in conjunction with the attorney work product privilege in the following documents listed in Exhibit A: 1, 8, 13-18, 20-21, 23-24, 26-28, 30-31, 33-36, 88-90, and 94-99. Id.

### 2. Deliberative Process Privilege

"The deliberative process privilege, also known as the 'executive or governmental' privilege serves many purposes." Eugene Burger Management Corp. v. U.S. Dept. of Housing and Urban Development, 192 F.R.D. 1,4 (D.D.C. 1999) The main purpose of this privilege "which is well established in the law , is ... to prevent injury to the quality of agency decisions.'" Coefield, et al. City of LaGrange, Georgia, 913 F.Supp. 608, 615 (D.D.C. 19996)(quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975)). The deliberative process privilege prevents

-14-

harm to the quality of agency decisions by shielding the opinions, conclusions and reasoning used in the administrative and decision making process of the Government. See United States v. Morgan, (Morgan IV), 313 U.S. 40, 422 (1941); Petroleum Info Corp. v. Dept. of the Interior, 976 F2d. 1429, 1434 (D.C. Cir. 1920; Access Reports v. Dept. of Justice, 926 F2d. 1192, 1194-1195; (D.C. Cir. 1991); United States v. Farley, 11 F.3d at 1385, 1389 (7th Cir. 1993).

The privilege is designed to encourage frank and uninhibited communication among government officials in the course of creating public policy. NLRB v. Sears Roebuck & Co., 421 U.S. 132, 149-151 (1975); Petroleum Info. Corp., 976 F2d. at 1434; Access Reports, 926 F.2d at 1194-1195; Farley, 11 F3d. at 1389.  The deliberative process privilege remains even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice." Federal Open Market Committee v. Merrill, 443 U.S. 340, 360 (1979).

Because "Exemption 5 'was intended to protect not simply the deliberative material, but also the deliberative process of agencies,'" National Wildlife Federation v. U.S. Forest Service, 861 F.2d 114, 1118 (9th Cir. 1974) (quoting Montrose Chemical Corp. of Ccalifornia v. Train , 491 F2d. 63, 71 (D.C. Cir. 1974)) the courts have found that even factual materials are encompassed within the privilege, if release of such materials would harm the overall deliberative process.

For a document to be covered by the deliberative process privilege, two requirements must be satisfied.  First, it must be predecisional, ie., "antecedent to the adoption of agency policy." Jordan v. U.S. Dept. of Justice, 591 F2d. 753, 744 (D.C. Cir. 1978)(en banc).  In determining whether a document is predecisional, the Supreme Court has held that an agency need not identify a specific decision in connection with which a document is prepared. NLRB v.

-15-

Sears, Roebuck & Co., 421 U.S. at 151 n.18.  The Court recognized that agency deliberations do not always ripen into agency decisions, and that ultimately the privilege is meant to protect the decisional process, rather than any particular document or decision.  Id.; see also Dudman Communications Corp. v. Dept. of the Air Force, 815 F2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative process – not to protect specific materials.").  It is sufficient for the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States Gas Corp. v. Dept. of Energy, 617 F2d. 854,868 (D.C.Cir. 1980).

Second, the document must be deliberative in nature, i.e., it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975).  Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising parts of a process by which governmental decisions and policies are formulated." NLRB v. Sears Roebuck & Co., 421 U.S. at 150.  Thus, the exemption covers recommendations, drafts documents, proposals, analysis, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultive process. Coastal States, 617 F2d. at 866.

Some of the records contain pre-decisional and deliberative information related to matters that were being considered by the USAO DNH and other federal and state agencies for criminal action against plaintiff.  Finnegan Decl. 31.  To disclose this information would reveal internal deliberations among government personnel, namely, discussions of various litigation issues, alternatives, and strategies.  Id.  Disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency decision-making.  Id.  The

-16-

attorney work product and deliberative process information is so interwoven as to make it all, in essence, attorney work product.  Id.  EOUSA has asserted Exemption 5 in conjunction with the attorney work product and deliberative processes privileges in the following documents listed in Exhibit A: 8, 20-21, 23-24, 26-27, 94, and 96-99.  Id.

### G.    EOUSA Properly Applied Exemption 6

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."  Lepelletier v.  FDIC, 164 F.3d 37, 46 (D.C. Cir.  1999), (emphasis supplied), quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person."  U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information."  Lepelletier, 164 F.3d at 46 (interior quotation marks omitted), citing United States Dept.  of Defense Dept. of Military Affairs v.  FLRA, 964 F.2d 26, 29 (D.C. Cir.  1992), quoting Department of Air Force v.  Rose, 425 U.S. 352, 372 (1976).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its

statutory duties' or otherwise let citizens know 'what their government is up to.'" <u>Lepelletier</u>, 164

F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting

<u>United States Dept. of Defense v. FLRA</u>, 510 U.S. 487, 497 (1994). <u>See</u> <u>also</u> <u>Reporters</u>

<u>Committee</u>, 489 U.S. at 773.  Information that does not directly reveal the operation or activities

of the federal government "falls outside the ambit of the public interest that the FOIA was

enacted to serve." <u>Id.</u> at 775.  Further, "something, even a modest privacy interest, outweighs

nothing every time." <u>National Ass'n of Retired Fed. Employees v. Horner</u>, 879 F.2d 873, 879

(D.C. Cir. 1989); <u>but</u> <u>see</u> <u>Lepelletier</u>, 164 F.3d at 48 (in extraordinary circumstance where the

individuals whose privacy the government seeks to protect have a "clear interest" in release of the

requested information, the balancing under Exemption 6 must include consideration of that

interest).

EOUSA categorically applied Exemption (b)(6) in conjunction with Exemption (b)(7)(C)

to protect all information pertaining to third-party individuals in order to protect their privacy

interests in the information.  Finnegan Decl. ¶ 34.  The categorical application of this exemption

was appropriate because no consent or authorization to release this information was provided to

EOUSA in connection with this request, and Mr. Lopez did not meet his burden of identifying

any legitimate public interest in disclosure.  <u>Id.</u>  EOUSA asserted Exemption 6 in conjunction

with Exemption (b)(7)(C) in the following documents listed in Exhibit A: 1-9, 13-23, 25, 30, 32,

35-93, and 95.  <u>Id.</u>  EOUSA also invoked Exemptions 6 and 7(C) to withhold the names of grand

jury witnesses and other third parties mentioned in the grand jury transcripts.  <u>Id.</u>

**1.     Names and Signatures of State and Federal Law Enforcement Personnel**

Exemption (b)(6) has been asserted to protect the names of federal and state law

enforcement agents, and the signatures of state law enforcement personnel, who were responsible

for conducting, supervising, and/or maintaining the investigative activities reported in this investigation. Finnegan Decl. ¶ 35. Publicity, adverse or otherwise, regarding any particular investigation conducted by an agent may seriously impair his or her effectiveness in conducting future investigations. <u>Id</u>. This privacy consideration also protects agents from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the state or federal government. <u>Id</u>. Law enforcement agents conduct official inquiries into violations of various criminal statutes. <u>Id</u>. They come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disturbances in the lives of individuals. <u>Id</u>. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on the agent involved in the investigation. <u>Id</u>. The publicity associated with the release of the identity of an agent in connection with a particular investigation could trigger hostility towards him or her by the persons being investigated. <u>Id</u>. Accordingly, there is a strong privacy interest in the identities of the agents that were involved in this investigation. <u>Id</u>. Balancing that privacy interest against the public interest in disclosure EOUSA determined that these agents have a strong privacy interest in their names and that there is no public interest in this information because it will not shed light on the operations and activities of the federal government. <u>Id</u>.

The names of USAO employees and state employees have also been withheld pursuant to Exemption (b)(6). Finnegan Decl. ¶ 36. Support personnel are assigned to handle tasks relating to criminal investigations and are in positions to access information concerning official law enforcement investigations. <u>Id</u>. They could therefore become targets of harassing inquiries for unauthorized access to the details of an investigation if their identities were released. <u>Id</u>. There

-19-

is a substantial privacy interest in the identities of these support employees.  Id.  After balancing

this privacy interest against the public interest, EOUSA found no legitimate public interest that

outweighed this privacy interest because the identities of support employees will not shed light

on the operations and activities of the government.  Id.  Exemption (b)(6) has been cited in

conjunction with Exemption (b)(7)(C) to withhold the names of federal and state law

enforcement agents and support personnel in the following documents listed in Exhibit A: 1, 22,

32, 38-39, 42-43, 45-51, 60, 62-63, 65, 67, 70, 72-73, 76, 78, 81-86, 88-90, 93, and 95.  Id.

EOUSA is also asserting Exemption 6, in conjunction with Exemption (b)(7)(C), to protect the

names of federal and state law enforcement personnel that may be contained in the grand jury

material.  Id.

     **2.**     **Names and/or Identifying Information Pertaining to Third Parties**
               **Who Provided Information to the Government**

Exemption (b)(6) has been asserted to protect the names, signatures, and identifying

information pertaining to individuals who assisted the government in its investigation of plaintiff

by providing information concerning his activities.  Finnegan Decl. ¶ 37.  The identifying

information pertaining to these individuals that EOUSA withheld under Exemption (b)(6) in

conjunction with Exemption (b)(7)(C) consists of Social Security Numbers, home addresses and

telephone numbers, business addresses, dates of birth, places of residence, and a fax number.  Id.

Information provided by individuals during an interview reflects some of the most

productive investigative tools utilized by law enforcement agencies.  Finnegan Decl. ¶ 38.  The

largest roadblock in successfully obtaining the desired information through an interview is the

fear by the interviewee of his or her identity possibly being exposed and, consequently, being

harassed, intimidated or threatened with legal or economic reprisal, or possibly physical harm.

Id.  In order to surmount these obstacles, persons interviewed and who provide information in

response to a subpoena  must be assured that their identities will be held in the strictest

confidence.  Id.  EOUSA has attempted to release all segregable portions of the information

provided by these individuals without revealing their identities.  Id.  The continued access to

persons willing to provide pertinent facts bearing on a particular investigation outweighs any

benefits derived from releasing the identities of these individuals at this time, even though these

individuals may have provided trial testimony.  Id.  Furthermore, there is no legitimate public

interest to be served by releasing the identities of persons who provided information to the

government because it will not shed light on the operations and activities of the government.  Id.

Exemption (b)(6) has been cited in conjunction with Exemption (b)(7)(C) to protect the names

and identifying information pertaining to third parties who provided information to the

government in the following documents listed in Exhibit A: 1-5, 15, 23, 30, 32, 36, 41, 45, 71,

75, and 90-91.  Id.  EOUSA is also asserting Exemption 6, in conjunction with Exemption

(b)(7)(C), to protect the names and identifying information pertaining to third parties who

provided information to the government that may be contained in the grand jury material.  Id.

>    3.    **Names and/or Identifying Information Pertaining
>          To Third Parties Merely Mentioned**

_____    Exemption (b)(6) has also been asserted to protect the name, signature,  home & business

address, telephone number, age, occupation, spouse's name, court ID number, juror number,

bank account number, driver's license number, gender, personal affiliation with plaintiff, car title

number and registration number, and employer's name and address, of those individuals who are

only incidentally mentioned in these records.  Finnegan Decl.¶ 39.  To release the names and the

above described identifying information pertaining to these third parties who are merely

mentioned in an investigation would not shed any light on the government's performance of its

statutory duties with respect to this investigation.  Id.  However, the disclosure of this

information could cause unsolicited and unnecessary attention to be focused on these individuals and/or their family members. Id. The mention of their names in the context of a federal criminal investigation could cast them in an unfavorable or negative light if released to the public. Id. Thus, these individuals have a strong privacy interest in the protection of such personal information. Id. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who were merely mentioned in this investigation because it will not shed light on the operations and activities of the federal government. Id. Exemption (b)(6) has been cited in conjunction with Exemption (b)(7)(C) to protect the names and identifying information pertaining to third parties merely mentioned in the investigation in the following documents listed in Exhibit A: 6-9, 15-21, 25, 35, 37, 40, 44, 49, 51-59, 61, 66, 68, 71, 77, 79, 88-89, and 92. Id. EOUSA is also asserting Exemption 6, in conjunction with Exemption (b)(7)(C), to protect the names and identifying information pertaining to third parties merely mentioned in the grand jury material. Id.

### 4.     Names and/or Identifying Information Pertaining To Third Parties of Investigative Interest to the Government

EOUSA has asserted Exemption (b)(6) to protect the names and identifying personal and non-public information concerning third-party individuals in whom the federal and/or state law enforcement agencies had an investigative interest during the course of this investigation. Finnegan Decl. ¶ 40. EOUSA is withholding the following personal information about these third-party individuals: their name, date of birth, address, details of their criminal history, gender, race, Social Security Number, and telephone number pursuant to Exemption 6. Id.

Being linked with any law enforcement investigation carries a strong negative connotation. Finnegan Decl. ¶ 41. To release the identities of these individuals to the public as subjects or suspects of a criminal investigation could subject them to harassment or

embarrassment, as well as undue public attention.  Id.  In balancing the privacy interest in this

information against the public interest in disclosure, EOUSA found no legitimate public interest

in the release of personal, non-public information concerning these individuals who were of

investigative interest to the government because it will not shed light on the operations and

activities of the government.  Id.  Exemption (b)(6) has been cited in conjunction with

Exemption (b)(7)(C) in the following documents listed in Exhibit A: 13-14, 22, 30, 50, 64, 69,

74, 80, 87, and 91.  EOUSA is also asserting Exemption 6, in conjunction with Exemption

(b)(7)(C), to protect the names and identifying information pertaining to third parties of

investigative interest to the government who may be mentioned in the grand jury material.  Id.

## H.    EOUSA Properly Applied Exemption 7(C)

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes,
> but only to the extent that the production of such law enforcement
> records or information . . . (C) could reasonably be expected to
> constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who

are identified in agency records in connection with law enforcement investigations.  Reporters

Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987),

modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749

(1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C.

Cir. 1996).  Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect

the identities of witnesses or other persons mentioned in law enforcement files in such a way as

to associate them with criminal activity.  Reporters Comm. for Freedom of the Press, 489 U.S. at

780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995);

SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

 The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C).  Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity.  Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed elsewhere does not diminish their privacy interests.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

 Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ing] light on an agency's performance of its statutory duties."  Reporters Comm. for Freedom of the Press, 489 U.S. at 773.  This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'"  Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990).  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).  Furthermore, the requester must not only demonstrate the existence of the public interest but also

that the public interest is both significant and compelling, in order to overcome legitimate privacy

interests. <u>Senate of Puerto Rico v. Dept. of Justice</u>, 823 F.2d 574, 588 (D.C. Cir. 1987); <u>Stone v.

FBI</u>, 727 F. Supp. 662, 667-69 (D.D.C. 1990). The Supreme Court in <u>Favish</u> has clearly defined

the standards required to be applied when courts conduct the balancing test under Exemption

7(C):

> where there is a privacy interest protected by Exemption 7(C) and the public interest
> being asserted is to show that responsible officials acted negligently or otherwise
> improperly in the performance of their duties, requester must establish more than a
> bare suspicion in order to obtain disclosure. Rather, the requester must produce
> evidence that would warrant a belief by a reasonable person that the alleged
> government impropriety might have occurred.

<u>National Archives and Records Administration v. Favis</u>, 124 S.Ct. 1570, 1579, 1581 (2004).

All of the information at issue in this case was compiled by the USAO DNH for the

criminal investigation and prosecution of plantiff for violation of federal drug and firearm laws.

Finnegan Decl. ¶ 43. Accordingly, this information was compiled for law enforcement purposes.

<u>Id</u>.

When withholding information pursuant to this exemption, EOUSA is required to balance

the privacy interests of the individuals mentioned in these records against any public interest in

disclosure. Finnegan Decl. ¶ 44. In asserting this exemption, each item of information was

examined to determine the degree and nature of the privacy interest of every individual whose

name and/or identifying data appears in these records. <u>Id</u>. The public interest in disclosure of this

information is determined by whether the information in question would inform plaintiff and the

general public about the USAO's and other federal law enforcement agencies' performance of

their mission to enforce federal criminal statutes and/or how the USAO and other federal agencies

actually conduct internal operations and investigations. <u>Id</u>. In each instance where information

was withheld, it was determined that individual privacy interests were not outweighed by any public interest in disclosure.  Id.  To reveal the names and/or identifying data of third party individuals in the context of a narcotics investigation could reasonably be expected to cause embarrassment and humiliation, and thus constitute an unwarranted invasion of personal privacy. Id.

At the time that these records were reviewed, EOUSA considered the passage of time and its effect on the privacy interests of third party individuals in balancing the privacy and the public interests.  Finnegan Decl. ¶ 45.  It was determined that the privacy interests are as strong and pertinent now as when the records were created in 2001 through 2005, and that there is no public interest in these records which would outweigh the privacy interests of these individuals.  Id.

Every effort has been made to release all segregable information without invading the privacy interests of third-party individuals named in these records.  Finnegan Decl. ¶ 46.  The effort to release all segregable information includes releasing all substantive information concerning plaintiff unless it would reveal the identities of persons who provided the information. Id.  EOUSA asserted Exemption (b)(7)(C) in conjunction with Exemption (b)(6) in the following documents listed in Exhibit A: 1-9, 13-23, 25, 30, 32, 35-93, and 95.  Id.  EOUSA also invoked Exemptions 7(C) and 6 to withhold the names of grand jury witnesses and other third parties in the grand jury transcripts.  Id.

### 1. Names and Signatures of State and Federal Law Enforcement Personnel

Exemption (b)(7)(C) has been asserted to protect the names of DEA Special Agents and state law enforcement agents and support personnel, and the signatures of state law enforcement personnel, who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in this investigation.  Finnegan Decl. ¶ 47.  Publicity, adverse or otherwise,

regarding any particular investigation conducted by a state or federal law enforcement agent may seriously impair their effectiveness in conducting future investigations. <u>Id</u>. This privacy consideration also protects these agents from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the state or federal government. <u>Id</u>. State and federal law enforcement agents conduct official inquiries into violations of various criminal statutes and come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disruptions in the lives of individuals. <u>Id</u>. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge against the agents involved in the investigation. <u>Id</u>. The publicity associated with the release of the identity of a law enforcement agent in connection with a particular investigation could trigger hostility towards the agent by such persons. <u>Id</u>. Balancing this substantial privacy interest against the public interest in disclosure, EOUSA could find no legitimate public interest to be served in the disclosure of the identities of these law enforcement agents in this investigation to the public because it will not shed light on the operations and activities of the federal government. <u>Id</u>.

The names of USAO and state law enforcement support personnel have also been withheld pursuant to Exemption (b)(7)(C). Finnegan Decl. ¶ 48. Support personnel are assigned to handle tasks relating to criminal investigations. <u>Id</u>. These individuals are in positions to access information concerning official law enforcement investigations. <u>Id</u>. They could therefore become targets of harassing inquiries for unauthorized access to the details of a criminal investigation if their identities were released. <u>Id</u>. The rationale for protecting the identities of federal and state law enforcement agents, as discussed in Paragraph 46, <u>supra</u>, also pertains to the identities of these support employees. <u>Id</u>. EOUSA also balanced this substantial privacy interest against the

public interest and determined that the privacy interest outweighs the public interest in disclosure because this information will not shed light on the operations and activities of the federal government.  Id.  Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to withhold the names and identifying information pertaining to federal and state law enforcement agents and support personnel in the following documents listed in Exhibit A: 1, 22-23, 32, 38-39, 42-43, 45-50, 60, 62-63, 65, 67, 70, 72-73, 76, 78, 81-86, 88-90, 93, and 95.  Id.  EOUSA is also asserting Exemption 7(C), in conjunction with Exemption (b)(6), to protect the names of federal and state law enforcement personnel  who may be identified in the grand jury material.  Id.

      **2.  Names and/or Identifying Information Pertaining to Third Parties Who Provided Information to the Government**

      Exemption (b)(7)(C) has also been asserted to protect the names and/or identifying information pertaining to individuals who assisted the government by providing details related to the narcotics investigation of plaintiff.  Finnegan Decl. ¶ 49.  The identifying information pertaining to these individuals that EOUSA withheld under Exemption (b)(7)(C) in conjunction with Exemption (b)(6) consists of Social Security Numbers, home addresses and telephone numbers, business addresses, dates of birth, places of residence, and a fax number.  Id.

      Information provided by private citizens during an interview reflects some of the most productive investigative tools utilized by law enforcement agencies.  Finnegan Decl. ¶ 50.  The largest roadblock in successfully obtaining the desired information through an interview is the fear by the interviewee of his or her identity possibly being exposed and, consequently, being harassed, intimidated or threatened with legal or economic reprisal, or possible physical harm.  Id.  In order to surmount these obstacles, persons interviewed must be assured that their identities will be held in the strictest confidence.  Id.  EOUSA has attempted to release all segregable portions of the information provided by these individuals without revealing their identities.  Id.  The

government's continued access to private citizens who are willing to provide pertinent facts in a particular investigation outweighs any benefit to be derived from releasing the identities of these individuals. Id. These individuals have a strong privacy interest in this information. Id. Balancing this privacy interest against the public interest, EOUSA found no legitimate public interest to be served by releasing the identities of private citizens who provided information to the government because it would not shed light on the operations and activities of the USAO or other federal agencies. Id. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to protect the names and identifying information pertaining to third parties who provided information to the government in the following documents listed in Exhibit A: 1-5, 15, 23, 30, 32, 36, 41, 45, 71, 75, and 90-91. Id. EOUSA is also asserting Exemption 7(C), in conjunction with Exemption (b)(6), to protect the names and identifying information pertaining to third parties who provided information to the government and who may be identified in the grand jury material. Id.

_____In some instances certain information was inextricably intertwined with references to Mr. Lopez. Finnegan Decl. ¶ 51. However, EOUSA was able to segregate certain references and disclose them without creating the risk of revealing privacy-protected information of the other third party individuals discussed within. Id.

In addition, Mr. Lopez failed to provide EOUSA with authorization or consent to release otherwise privacy protected information from any of the third party individuals named in these records. Finnegan Decl. ¶ 52.

### 3. Names and/or Identifying Information Pertaining To Third Parties Merely Mentioned

_____Exemption (b)(7)(C) has also been asserted to protect the name, signature, home & business address, telephone number, age, occupation, spouse's name, court ID number, juror number, bank account number, driver's license number, gender, personal affiliation with plaintiff,

car title number and registration number, and employer's name and address, of those individuals who are only incidentally mentioned in these records. Finnegan Decl. ¶ 53. To release the identities of these third parties who are merely mentioned in an investigation would not shed any light on the government's performance of its statutory duties with respect to this investigation. Id. However, the disclosure of their identities could cause unsolicited and unnecessary attention to be focused on these individuals and/or their family members. Id. The mention of their names in the context of a federal narcotics investigation could cast them in an unfavorable or negative light if released to the public. Id. Thus, these individuals have a strong privacy interest in the protection of such personal information. Id. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who were merely mentioned in this investigation because it will not shed light on the operations and activities of the federal government. Id. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to protect the names and identifying information pertaining to third parties merely mentioned in the investigation in the following documents listed in Exhibit A: 6-9, 15-21, 25, 35, 37, 40, 44, 49, 51-59, 61, 66, 68, 71, 77, 79, 88-89, and 92. Id. EOUSA is also asserting Exemption 7(C), in conjunction with Exemption (b)(6), to protect the names and identifying information pertaining to third parties who are merely mentioned in the grand jury material. Id.

### 4. Names and/or Identifying Information Pertaining To Third Parties of Investigative Interest to the Government

EOUSA has asserted Exemption (b)(7)(C) to protect the names and identifying personal and non-public information concerning third-party individuals in whom the federal and/or state law enforcement agencies had an investigative interest during the course of this investigation. Finnegan Decl. ¶ 54. EOUSA is withholding the following personal information about these third-party individuals: their name, date of birth, address, details of their criminal history, gender,

race, Social Security Number, and telephone number pursuant to Exemption (b)(7)(C), in

conjunction with Exemption (b)(6).  Id.

Being linked with any law enforcement investigation carries a strong negative connotation.

To release the identities of these individuals to the public as subjects or suspects of a criminal

investigation could subject them to harassment or embarrassment, as well as undue public

attention.  Finnegan Decl. ¶ 55.  In balancing the privacy interest in this information against the

public interest in disclosure, EOUSA found no legitimate public interest in the release of personal,

non-public information concerning these individuals who were of investigative interest to the

government because it will not shed light on the operations and activities of the government.  Id.

Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) in the following

documents listed in Exhibit A: 13-14, 22, 30, 50, 64, 69, 74, 80, 87, and 91.  Id.  EOUSA is also

asserting Exemption 6, in conjunction with Exemption (b)(7)(C), to protect the names and

identifying information pertaining to third parties of investigative interest to the government who

may be mentioned in the grand jury material.  Id.

### SEGREGABILITY

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte."

Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C.

Cir. 1999).  The FOIA requires that, if a record contains information that is exempt from

disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566

F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  Mead Data, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  Id.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  Mead Data, 566 F.2d at 261, n.55.

In this matter, all responsive information has been provided to plaintiff and reasonably segregable information was disclosed after deletion of the exempt information.  Finnegan Decl. ¶ 56.  Each document was evaluated to determine if any information could be segregated and released.  Id.  The documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document or without identifying a third party individual.  Id.

Each step in the handling of Plaintiff's  request has been entirely consistent with the EOUSA and the USAO's procedures adopted to insure an equitable response to all persons seeking access to records under the FOIA/PA.  Finnegan Decl. ¶ 57.

In sum, the EOUSA has properly responded to Plaintiff's FOIA request and has provided plaintiff with all of the reasonably segregable nonexempt information to which he is entitled.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that its motion for summary judgment be granted.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
CHARLOTTE A. ABEL, D.C. BAR #388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332

JAMES PAXTON
Paralegal Specialist

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of February, 2008 a copy of the foregoing *Defendant's*

*Motion for Summary Judgment and Supporting Memorandum, Vaughn Index, Declaration and*

*Exhbits,* together with a proposed *Order*, were  served upon plaintiff in *pro se* by depositing a

copy of the foregoing in the U.S. Mail, first class postage prepaid, addressed to:


                        CARLOS LOPEZ
                        R03010-049
                        Devens Federal Medical Center
                        Inmate Mail/Parcels
                        P.O. Box 879
                        Ayers, MA 01432


                        __/s/_____
                        CHARLOTTE A. ABEL
                        Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CARLOS LOPEZ**, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No.: 07-2002 (RMU) |
|  | ) |
| **EXECUTIVE OFFICE FOR THE** | ) |
| **UNITED STATES ATTORNEYS**, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Defendant, Executive Office for the United States Attorneys ("EOUSA") Department of

Justice ("DOJ") submits this statement of material facts as to which there is no genuine dispute

in accordance with Local Rule 7.1(h).  The attached declarations of Karen Finnegan and attached

exhibits thereto, support this statement.

1.       On August 14, 2006, EOUSA received a copy of Plaintiff's FOIA and Privacy

Act request dated August 7, 2006, which sought access to the following

information:

"all and any records both maintained and nonmaintained on file relating to my arrest and
prosecution on federal narcotic and firearm violations in the State of New Hampshire... In
particular, I seek copies of Special Agent (SA) Steven Story, SA Norman Houle, and SA
Edward Bals' investigation reports made on this matter."

Plaintiff identified the court docket number associated with his criminal case as "01-79-01-M"

and stated that he was arrested on July 25, 2001.  Declaration of Karen Finnegan ("Finnegan

Decl.") ¶ 7, Exhibit  B.

2.       In two letters dated August 29, 2006, EOUSA acknowledged receipt of

plaintiff's request and assigned it request number 06-2619, and advised him that some of the

information that he requested most likely originated with the Drug Enforcement Administration ("DEA") and directed him to contact DEA at the address provided.  Finnegan Decl. ¶ 8.  See Exhibit C.  In this letter EOUSA also advised plaintiff that he could file an administrative appeal with the U.S. Department of Justice, Office of Information and Privacy ("OIP"), 1425 New York Avenue, NW, Washington, D.C.  20530-0001.  Id.

3.     The second August 29 letter identified the District of New Hampshire as the location where a search would be conducted for responsive records and advised plaintiff that by making the request he had agreed to pay fees up to $25 pursuant to 28 C.F.R. § 16.3(c), and that if processing fees exceeded this amount EOUSA would notify him of the estimated fee amount. Finnegan Decl. ¶ 9.  See Exhibit D.

4.     By letter dated September 7, 2006, plaintiff expressed his willingness to pay for all costs associated with his request.  Finnegan Decl. ¶ 10. See Exhibit E.

5.     By letter dated April 19, 2007, plaintiff provided EOUSA with his new mailing address and inquired into the status of his request.  Finnegan Decl. ¶ 11. See Exhibit F.

6.     In a letter dated August 14, 2007, plaintiff inquired into the status of the processing of his request.  Finnegan Decl. ¶ 12. See Exhibit G.

7.     In a letter dated December 21, 2007, EOUSA advised plaintiff that 305 pages of material were being released in full, 72 pages of material were being released in part and 276 pages of material were being withheld in full.   Finnegan Decl. ¶ 13.  See Exhibit H.  EOUSA also advised plaintiff that certain information was being withheld  pursuant to 5 U.S.C. §§ 552(b)(3), F.R.C.P. 6(e) and 5 U.S.C. App. 4 § 107(a), (b)(5), (b)(7)(C),and 5 U.S.C. § 552a(j)(2).  Id.  In this letter, EOUSA advised plaintiff that a copy of his Presentence Investigation Report ("PSR") was contained in the USAO's criminal case file.  Id.  EOUSA also

advised that in light of the fact that plaintiff was an inmate in a Federal correctional facility access to his PSR would be granted in accordance with the policies of the Federal Bureau of Prisons.  Id.  Accordingly, EOUSA advised plaintiff to contact his Unit Team with regard to accessing his PSR.  Id.  EOUSA also advised plaintiff that processing fees in the amount of $140.10 was due and that payment should be made within 30 days of the date of the letter.  Id. Finally, EOUSA advised plaintiff that he could file an administrative appeal with OIP.  Id.

8.      In a second letter dated December 21, 2007,  EOUSA referred  305 pages of responsive material to DEA, 6 pages of responsive material to the Federal Bureau of Investigation, 2 pages of responsive material to the Department of Veterans Affairs, 9 pages of responsive material to the Bureau of Alcohol, Tobacco, and Firearms, and 5 pages of responsive material to the U.S. Probation Office for processing and direct response to plaintiff.  Finnegan Decl. ¶ 14.  See Exhibit I.

9.       EOUSA has no record of receiving payment of the processing fees assessed in its December 21, 2007, letter to Mr. Lopez.  Finnegan Decl. ¶ 15.

10.     By letter dated January 31, 2008, EOUSA made a supplemental release of 6 pages of material to Mr. Lopez.  Finnegan Decl. ¶ 16.  EOUSA made this supplemental release because certain third party information was inadvertently disclosed in EOUSA's prior release of material to Mr. Lopez.  Id.  EOUSA also addressed instances of inconsistent processing of information in this supplemental release.  Id.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
CHARLOTTE A. ABEL, D.C. BAR #388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332

JAMES PAXTON
Paralegal Specialist

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **CARLOS LOPEZ**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-2002 (RMU) |
| | ) |
| **EXECUTIVE OFFICE FOR THE** | ) |
| **UNITED STATES ATTORNEYS**, | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

## ORDER

This matter having come before the Court on the Defendant EOUSA's  Motion for

Summary Judgment and the Court having considered the entire record herein, it is hereby

**ORDERED** that defendant's motion for summary is GRANTED, and it is further

**ORDERED** that judgment is entered in favor of the Executive Office for United States

Attorneys.


DATED:  _____, 2008.



_____
RICARDO M. URBINA
UNITED STATES DISTRICT JUDGE



CARLOS LOPEZ                              CHARLOTTE A. ABEL
R03010-049                               Assistant United States Attorney
Devens Federal Medical Center            United States Attorney's Office
Inmate Mail/Parcels                      Civil Division
P.O. Box 879                             555 Fourth Street, N.W.
Ayers, MA 01432                          Washington, DC 20530
Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CARLOS LOPEZ, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | Civ. No. 07-02002 |
| | ) | |
| EXECUTIVE OFFICE FOR | ) | |
| UNITED STATES ATTORNEYS, | ) | |
| | ) | |
| DEFENDANT | ) | |
| | ) | |
| | ) | |

## DECLARATION OF KAREN M. FINNEGAN

I, Karen M. Finnegan, declare the following to be a true and correct statement of facts:

1.) I am an Attorney Advisor in the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). I am assigned to the component of EOUSA designated to administer the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, and the Privacy Act of 1974 ("PA"), 5 U.S.C.§552a.

2.) Due to the nature of my official duties, I am personally familiar with the FOIA/PA request made to EOUSA by Carlos Lopez, which forms the basis for this litigation.

3.) My official duties include: making final disclosure determinations

on records requested by an individual or organization using the FOIA/PA; ensuring compliance with the provisions of the FOIA and PA, and Department of Justice FOIA Regulation 28 C.F.R. § 16.3 *et seq.* and § 16.40 *et seq.*; and defending EOUSA's position in litigating challenges to EOUSA's initial actions.

       4.) My official duties also include: acting as liaison between EOUSA and the components within the DOJ regarding FOIA/PA requests; reviewing requests for records sought from EOUSA and /or the 94 U.S. Attorney's Offices ("USAO's"); reviewing request-related correspondence; reviewing searches performed in response to requests; and, reviewing proposed responses made to those requests.

       5.) The statements that follow are made on the basis of my review of EOUSA's official files and records, my own personal knowledge, and the information I acquired in performing my official duties.

       6.) The purpose of this declaration is to provide the Court and Plaintiff with an explanation of the handling of his access request. This declaration is submitted in support of Defendant's motion for summary judgement.

## BACKGROUND

       7.) On August 14, 2006, EOUSA received a copy of Plaintiff's FOIA and Privacy Act request dated August 7, 2006, which sought access to the following information:

"all and any records both maintained and nonmaintained on file relating to my arrest and prosecution on federal narcotic and firearm violations in the State of New Hampshire... In particular, I seek copies of Special Agent (SA) Steven Story, SA Norman Houle, and SA Edward Bals' investigation reports made on this matter."

Mr. Lopez identified the court docket number associated with his criminal case as "01-79-01-M" and stated that he was arrested on July 25, 2001.

(See Exhibit B.)

8.) In two letters dated August 29, 2006, EOUSA acknowledged receipt of Mr. Lopez's request and assigned it request number 06-2619, and advised him that some of the information that he requested most likely originated with the Drug Enforcement Administration ("DEA") and directed him to contact DEA at the address provided. In this letter EOUSA also advised Mr. Lopez that he could file an administrative appeal with the U.S. Department of Justice, Office of Information and Privacy ("OIP"), 1425 New York Avenue, NW, Washington, D.C. 20530-0001. (See Exhibit C.)

9.) The second August 29 letter identified the District of New Hampshire as the location where a search would be conducted for responsive records and advised Mr. Lopez that by making the request he had agreed to pay fees up to $25 pursuant to 28 C.F.R. § 16.3(c), and that if processing fees exceeded this amount EOUSA would notify him of the estimated fee amount. (See Exhibit D.)

10.) By letter dated September 7, 2006, Mr. Lopez expressed his willingness to pay for all costs associated with his request. **(See Exhibit E.)**

11.) By letter dated April 19, 2007, Mr. Lopez provided EOUSA with his new mailing address and inquired into the status of his request. **(See Exhibit F.)**

12.) In a letter dated August 14, 2007, Mr. Lopez inquired into the status of the processing of his request. **(See Exhibit G.)**

13.) In a letter dated December 21, 2007, EOUSA advised Mr. Lopez that 305 pages of material were being released in full, 72 pages of material were being released in part and 276 pages of material were being withheld in full. EOUSA also advised Mr. Lopez that certain information was being withheld pursuant to 5 U.S.C. §§ 552(b)(3), F.R.C.P. 6(e) and 5 U.S.C. App. 4 § 107(a), (b)(5), (b)(7)(C), and 5 U.S.C. § 552a(j)(2). In this letter, EOUSA advised Mr. Lopez that a copy of his Presentence Investigation Report ("PSR") was contained in the USAO's criminal case file. EOUSA also advised that in light of the fact that Mr. Lopez was an inmate in a Federal correctional facility access to his PSR would be granted in accordance with the policies of the Federal Bureau of Prisons. Accordingly, EOUSA advised Mr. Lopez to contact his Unit Team with regard to accessing his PSR. EOUSA also advised Mr. Lopez that processing fees in the amount of $140.10 was due and that payment should be made within 30 days of the

date of the letter. Finally, EOUSA advised Mr. Lopez that he could file an administrative appeal with OIP. (See **Exhibit H.**)

14.) In a second letter dated December 21, 2007, EOUSA referred 305 pages of responsive material to DEA, 6 pages of responsive material to the Federal Bureau of Investigation, 2 pages of responsive material to the Department of Veterans Affairs, 9 pages of responsive material to the Bureau of Alcohol, Tobacco, and Firearms, and 5 pages of responsive material to the U.S. Probation Office for processing and direct response to Mr. Lopez. (See **Exhibit I.**)

15.) EOUSA has no record of receiving payment of the processing fees assessed in its December 21, 2007, letter to Mr. Lopez. However, after EOUSA mailed the December 21, 2007, release package to Mr. Lopez it determined that the package was sent to Mr. Lopez's former address. Accordingly, on or about January 30, 2008, EOUSA mailed the December 21 release package to Mr. Lopez at his address at FMC Devens, Unit H-A, P.O. Box 879, Ayers, MA 01432.

16.) By letter dated February 4, 2008, EOUSA made a supplemental release of 6 pages of material to Mr. Lopez. EOUSA made this supplemental release because certain third party information was inadvertently disclosed in EOUSA's prior release of material to Mr. Lopez. EOUSA also addressed instances of inconsistent processing of information in this supplemental release. (See

**Exhibit J.)**

## IDENTIFICATION OF RESPONSIVE RECORDS

17.) The records responsive to Mr. Lopez's request are located in the

USAO for the District of New Hampshire ("DNH"). In the USAO DNH, the

responsive records are maintained in the Criminal Case File System (Justice/USA-

007) and in the criminal case file captioned <u>U.S. v. Carlos Lopez</u>, CR. No. 01-79-

M. The USAO DNH prosecuted Mr. Lopez for violations of federal drug and

firearms laws.

## ADEQUACY OF THE SEARCH

18.) Upon receipt of Mr. Lopez's FOIA/PA request, the USAO DNH

conducted a systematic search to determine the location of any and all files relating

to him. The computer case tracking systems, the Legal Information Office

Network System ("LIONS") and the Tracking Assistance for the Legal Office

Network ("TALON") were used to determine all possible locations of responsive

files. In searching the LIONS database the defendant's name, USAO file jacket

number, and the district court case number are used as search terms. The

defendant's name is used to conduct a search of the TALON database for retrieval

of information. After completing the computer search to determine all possible

record locations in the Criminal and/or Civil Divisions, the FOIA contact directed

that the indexes for the criminal, civil, and asset forfeiture cases be searched for

responsive records, as well as the Federal Records Center Files Index.  Further, the

FOIA contact requested that the staff of the USAO DNH determine if they

maintained any responsive files.  The only responsive records located in the USAO

DNH were contained in Mr. Lopez's criminal case file.

## EOUSA'S DISCLOSURE DETERMINATION
## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE PRIVACY ACT

19.)  The USAO's Criminal Case Files (Justice/USA-007) are

contained in a Privacy Act System of Records.  The Attorney General has

promulgated rules exempting these records from the Privacy Act's access

provisions as authorized by 5 U.S.C.§ 552a(j)(2), which appear at 28 C.F.R.

§ 16.81.  Subsection (j)(2) exempts from mandatory disclosure all records

maintained by an agency or component performing as its principal function any

activity pertaining to the enforcement of criminal laws.  The mission of the USAO

is to enforce criminal and civil laws and defend the interests of the United States, to

provide Federal leadership in preventing and controlling crime, and to seek just

punishment for those found guilty of unlawful behavior.

20.)  The entire responsive case file pertains to the criminal

investigation of Mr. Lopez for violations of federal drug and firearms laws, and

was compiled for criminal law enforcement purposes by the USAO for the District

of New Hampshire, which performs as its principal function activities related to the

enforcement of criminal laws. Accordingly, this file is exempt from the access

provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2).

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

### EXEMPTION 5 U.S.C. §552(b)(3)
### OTHER FEDERAL NONDISCLOSURE STATUTES

21.) Exemption (b)(3) incorporates various nondisclosure provisions

that are contained in other federal statutes. For a statute to support withholding

information under this exemption, the statute either "(A) requires that the matters

be withheld from the public in such a manner as to leave no discretion on the issue,

or (B) establishes particular criteria for withholding or refers to particular types of

matters to be withheld."

22.) EOUSA has invoked Exemption 3, Federal Rule of Criminal

Procedure 6(e) to withhold the names of grand jury witnesses, information that may

reveal the scope and direction of a grand jury proceeding, grand jury subpoenas

and exhibits, and transcripts of grand jury testimony. In addition, EOUSA has

asserted Exemption 3, 5 U.S.C. App. 4 § 107(a), the Ethics in Government Act of

1978, to withhold confidential Conflict of Interest Certifications completed by

AUSAs.

### FEDERAL RULE OF CRIMINAL PROCEDURE 6(e)

23.) Federal Rule of Criminal Procedure ("FRCP") 6(e) regulates disclosure of matters occurring before a grand jury. In order for a Federal Rule of Procedure to qualify as "a statute" it must have been affirmatively enacted into law by Congress. Rule 6(e) has been held to meet this "statute" requirement, since it was affirmatively enacted by Congress in 1977. Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the form in which the material is substantively contained. Such material encompasses not only the direct revelation of grand jury transcripts, but also the disclosure of information that would reveal the identities of witnesses or jurors, the substance of the testimony given before the grand jury, the strategy or direction of the investigation, the deliberations or questions of the grand jurors, and any other matter, the disclosure of which would suggest a specific act, thought, or focus of the grand jury's deliberations. EOUSA applied Rule 6(e) in conjunction with Exemption 3 to withhold grand jury transcripts, subpoenas, and exhibits associated with a grand jury proceeding.

24.) EOUSA withheld certain records pursuant to FRCP 6(e) and Exemption 3 because release of grand jury subpoenas and exhibits, and transcripts of testimony would reveal the scope of the grand jury proceeding and the direction of the investigation by providing the identities of the targets of the investigation, the source of the evidence, as well as the actual evidence produced before the grand

jury. Release of this information would provide the requester with the scope of the grand jury's investigation by setting forth where the government sought to find evidence to develop its case, how the government developed its case, and who the government relied upon to develop the elements of crimes. EOUSA has asserted Exemption 3, FRCP 6(e) for all grand jury materials and in Document 22 listed in Exhibit A.

## 5 U.S.C. App. 4 § 107(a) (ETHICS IN GOVERNMENT ACT OF 1978)

25.) 5 U.S.C. App. 4 § 107(a)(1), Title 1 of the Ethics in Government Act of 1978, requires certain government officers and employees to file confidential financial disclosure reports. The confidential financial reporting system is designed to complement the public reporting system and to guarantee the "efficient and honest operation of the Government" by employees, "whose Government duties involve the exercise of significant discretion in certain sensitive areas . . . and to facilitate the review of possible conflicts of interest." 5 C.F.R. § 2634.901(a). These reports also assist an agency in "administering its ethics program and counseling its employees." Id.

26.) These reports are confidential and shall not be disclosed to the public. See 5 U.S.C. App. 4 § 107(a)(2). Further, 5 C.F.R. § 2634.604(b), specifically provides that "[n]o member of the public shall have access to such reports, except pursuant to an order of a Federal court or otherwise provided under

the Privacy Act." The USAO DNH requires AUSAs to report this confidential

financial information on a Conflict of Interest Certification form.

       27.) EOUSA has asserted Exemption 3 and 5 U.S.C. App. 4 § 107(a)

to withhold confidential Conflict of Interest Certification forms because this statute

mandates the withholding. Furthermore, a Federal court has not ordered the release

of these documents and the Privacy Act does not provide for release in this case.

EOUSA applied 5 U.S.C. App. 4 § 107(a) in conjunction with Exemption 3 to the

following documents listed in Exhibit A: 10-12, and 29.

**EXEMPTION 5 U.S.C. § 552(b)(5)**
**PRIVILEGED INFORMATION**

       28.) Exemption (b)(5) protects "inter-agency and intra-agency

memorandums or letters which would not be available by law to a party other than

an agency in litigation with the agency." The courts have construed this language

to exempt those documents that are normally privileged in the civil discovery

context.

       29.) EOUSA asserted Exemption 5 to protect: (1) hand-written notes

taken by an Assistant U.S. Attorney ("AUSA") or at his or her direction during the

Lopez pre-trial hearing(s) and trial, in witness interviews, during jury selection,

and pertaining to evidence gathered in the criminal investigation of Mr. Lopez; (2)

copies of evidence gathered by the government; (3) draft jury verdict forms, a draft

notice filing, draft jury instructions, and a draft indictment; (4) internal

communications between employees of the USAO regarding the Lopez

prosecution; and (5) the prosecutor's legal research all pursuant to the attorney

work product and the deliberative process privileges. EOUSA asserted Exemption

5 in conjunction with these privileges in the following documents listed in Exhibit

A: 1, 8, 13-18, 20-21, 23-24, 26-28, 30-31, 33-36, 88-90, 94-99. In addition,

EOUSA has asserted Exemption 5, attorney work product and deliberative process

privileges to protect Grand Jury exhibits, subpoenas and certain information

contained in the Grand Jury transcripts.

      30.) EOUSA invoked the attorney work product privilege to protect

records or portions of records that reflect such matters as trial preparation, trial

strategy, interpretations, and personal evaluations and opinions pertinent to Mr.

Lopez's criminal case. The relevant records were prepared by or at the request or

direction of an AUSA, in anticipation of or during litigation. The substance of the

records withheld in part or in their entirety are exempt from disclosure pursuant to

these privileges because they would reveal the details of an AUSA's preparation

for a criminal prosecution. EOUSA has asserted Exemption 5 in conjunction with

the attorney work product privilege in the following documents listed in Exhibit A:

1, 8, 13-18, 20-21, 23-24, 26-28, 30-31, 33-36, 88-90, and 94-99.

      31.) In addition, some of these same records contain pre-decisional

and deliberative information related to matters that were being considered by the

USAO DNH and other federal and state agencies for criminal action against Mr.

Lopez. To disclose this information would reveal internal deliberations among

government personnel, namely, discussions of various litigation issues,

alternatives, and strategies. Disclosure would jeopardize the candid and

comprehensive discussions that are essential for efficient and effective agency

decision-making. The attorney work product and deliberative process information

is so interwoven as to make it all, in essence, attorney work product. EOUSA has

asserted Exemption 5 in conjunction with the attorney work product and

deliberative processes privileges in the following documents listed in Exhibit A: 8,

20-21, 23-24, 26-27, 94, and 96-99.

## EXEMPTION 5 U.S.C. §552(b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

32.) 5 U.S.C. § 552(b)(6) exempts from disclosure:

personnel and medical files and similar files when the disclosure of
such information would constitute a clearly unwarranted invasion of
personal privacy.

33.) When asserting this exemption, each piece of information is

scrutinized to determine the nature and strength of the privacy interest of any

individual whose name and/or identifying information appeared in the documents

at issue. In withholding any information, each individual's privacy interest was

balanced against the public's interest in disclosure. In making this analysis, public

interest information was determined to be information which would shed light on

the federal government's performance of its statutory duties. In each instance

where information was withheld, it was determined that individual privacy rights

outweighed the public interest.

34.) As stated above, EOUSA categorically applied Exemption (b)(6)

in conjunction with Exemption (b)(7)(C) to protect  to all information pertaining to

third-party individuals in order to protect their privacy interests in the information.

The categorical application of this exemption was appropriate because no consent

or authorization to release this information was provided to EOUSA in connection

with this request, and Mr. Lopez did not meet his burden of identifying any

legitimate public in disclosure. EOUSA asserted Exemption 6 in conjunction with

Exemption (b)(7)(C) in the following documents listed in Exhibit A: 1-9, 13-23,

25, 30, 32, 35-93, and 95. EOUSA also invoked Exemptions 6 and 7(C) to

withhold the names of grand jury witnesses and other third parties mentioned in the

grand jury transcripts.

**Names & Signatures of State and Federal Law Enforcement Personnel**

35.) Exemption (b)(6) has been asserted to protect the names of

federal and state law enforcement agents, and the signatures of state law

enforcement personnel, who were responsible for conducting, supervising, and/or

maintaining the investigative activities reported in this investigation.  Publicity,

adverse or otherwise, regarding any particular investigation conducted by an agent

may seriously impair their effectiveness in conducting future investigations.  This

privacy consideration also protects agents from unnecessary, unofficial questioning

as to the conduct of an investigation, whether or not they are currently employed by

the state or federal government.  Law enforcement agents conduct official inquiries

into violations of various criminal statutes.  They come into contact with all strata

of society and conduct searches and make arrests, both of which result in

reasonable, but nonetheless serious disturbances in the lives of individuals.  It is

possible for a person targeted by such law enforcement action to carry a grudge

which may last for years, and to seek revenge on the agent involved in the

investigation.  The publicity associated with the release of the identity of an agent

in connection with a particular investigation could trigger hostility towards him or

her by the persons being investigated.  Accordingly, there is a strong privacy

interest in the identities of the agents that were involved in this investigation.

Balancing that privacy interest against the public interest in disclosure EOUSA

determined that these agents have a strong privacy interest in their names and that

there is no public interest in this information because it will not shed light on the

operations and activities of the federal government.

      36.) The names of USAO employees and state employees have also

been withheld pursuant to Exemption (b)(6). Support personnel are assigned to handle tasks relating to criminal investigations and are in positions to access information concerning official law enforcement investigations. They could therefore become targets of harassing inquiries for unauthorized access to the details of an investigation if their identities were released. There is a substantial privacy interest in the identities of these support employees. After balancing this privacy interest against the public interest, EOUSA found no legitimate public interest that outweighed this privacy interest because the identities of support employees will not shed light on the operations and activities of the government. Exemption (b)(6) has been cited in conjunction with Exemption (b)(7)(C) to withhold the names of federal and state law enforcement agents and support personnel in the following documents listed in Exhibit A: 1, 22, 32, 38-39, 42-43, 45-51, 60, 62-63, 65, 67, 70, 72-73, 76, 78, 81-86, 88-90, 93, and 95. EOUSA is also asserting Exemption 6, in conjunction with Exemption (b)(7)(C), to protect the names of federal and state law enforcement personnel that may be contained in the grand jury material.

### Names and/or Identifying Information Pertaining to Third Parties Who Provided Information to the Government

37.) Exemption (b)(6) has been asserted to protect the names, signatures, and identifying information pertaining to individuals who assisted the

government in its investigation of Mr. Lopez by providing information concerning his activities. The identifying information pertaining to these individuals that EOUSA withheld under Exemption (b)(6) in conjunction with Exemption (b)(7)(C) consists of Social Security Numbers, home addresses and telephone numbers, business addresses, dates of birth, places of residence, and a fax number.

38.) Information provided by individuals during an interview reflects some of the most productive investigative tools utilized by law enforcement agencies. The largest roadblock in successfully obtaining the desired information through an interview is the fear by the interviewee of his or her identity possibly being exposed and, consequently, being harassed, intimidated or threatened with legal or economic reprisal, or possibly physical harm. In order to surmount these obstacles, persons interviewed and who provide information in response to a subpoena must be assured that their identities will be held in the strictest confidence. EOUSA has attempted to release all segregable portions of the information provided by these individuals without revealing their identities. The continued access to persons willing to provide pertinent facts bearing on a particular investigation outweighs any benefits derived from releasing the identities of these individuals at this time, even though these individuals may have provided trial testimony. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who provided information to the government

because it will not shed light on the operations and activities of the government.

Exemption (b)(6) has been cited in conjunction with Exemption (b)(7)(C) to protect

the names and identifying information pertaining to third parties who provided

information to the government in the following documents listed in Exhibit A: 1-5,

15, 23, 30, 32, 36, 41, 45, 71, 75, and 90-91.  EOUSA is also asserting Exemption

6, in conjunction with Exemption (b)(7)(C), to protect the names and identifying

information pertaining to third parties who provided information to the government

that may be contained in the grand jury material.

### Names and/or Identifying Information Pertaining
### To Third Parties Merely Mentioned

39.)  Exemption (b)(6) has also been asserted to protect the name,

signature,  home & business address, telephone number, age, occupation, spouse's

name, court ID number, juror number, bank account number, driver's license

number, gender, personal affiliation with Mr. Lopez, car title number and

registration number, and employer's name and address, of those individuals who

are only incidentally mentioned in these records.  To release the names and the

above described identifying information pertaining to these third parties who are

merely mentioned in an investigation would not shed any light on the government's

performance of its statutory duties with respect to this investigation.  However, the

disclosure of this information could cause unsolicited and unnecessary attention to

be focused on these individuals and/or their family members. The mention of their names in the context of a federal criminal investigation could cast them in an unfavorable or negative light if released to the public. Thus, these individuals have a strong privacy interest in the protection of such personal information. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who were merely mentioned in this investigation because it will not shed light on the operations and activities of the federal government. Exemption (b)(6) has been cited in conjunction with Exemption (b)(7)(C) to protect the names and identifying information pertaining to third parties merely mentioned in the investigation in the following documents listed in Exhibit A: 6-9, 15-21, 25, 35, 37, 40, 44, 49, 51-59, 61, 66, 68, 71, 77, 79, 88-89, and 92. EOUSA is also asserting Exemption 6, in conjunction with Exemption (b)(7)(C), to protect the names and identifying information pertaining to third parties merely mentioned in the grand jury material.

### Names and/or Identifying Information Pertaining To Third Parties of Investigative Interest to the Government

40.) EOUSA has asserted Exemption (b)(6) to protect the names and identifying personal and non-public information concerning third-party individuals in whom the federal and/or state law enforcement agencies had an investigative interest during the course of this investigation. EOUSA is withholding the

following personal information about these third-party individuals: their name, date of birth, address, details of their criminal history, gender, race, Social Security Number, and telephone number pursuant to Exemption 6.

41.) Being linked with any law enforcement investigation carries a strong negative connotation. To release the identities of these individuals to the public as subjects or suspects of a criminal investigation could subject them to harassment or embarrassment, as well as undue public attention. In balancing the privacy interest in this information against the public interest in disclosure, EOUSA found no legitimate public interest in the release of personal, non-public information concerning these individuals who were of investigative interest to the government because it will not shed light on the operations and activities of the government. Exemption (b)(6) has been cited in conjunction with Exemption (b)(7)(C) in the following documents listed in Exhibit A: 13-14, 22, 30, 50, 64, 69, 74, 80, 87, and 91. EOUSA is also asserting Exemption 6, in conjunction with Exemption (b)(7)(C), to protect the names and identifying information pertaining to third parties of investigative interest to the government who may be mentioned in the grand jury material.

## FOIA EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

42.) 5 U.S.C. § 552(b)(7)(C) exempts from disclosure:

"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."

43.) All of the information at issue in this case was compiled by the USAO DNH for the criminal investigation and prosecution of Mr. Lopez for violation of federal drug and firearm laws. Accordingly, this information was compiled for law enforcement purposes.

44.) When withholding information pursuant to this exemption, EOUSA is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting this exemption, each item of information was examined to determine the degree and nature of the privacy interest of every individual whose name and/or identifying data appears in these records. The public interest in disclosure of this information is determined by whether the information in question would inform plaintiff and the general public about the USAO's and other federal law enforcement agencies' performance of their mission to enforce federal criminal statutes and/or how the USAO and other federal agencies actually conduct internal operations and investigations. In each instance where information was withheld, it was determined that individual privacy interests were not outweighed by any public interest in disclosure. To reveal the names and/or identifying data of third party individuals in the context of a narcotics

investigation could reasonably be expected to cause embarrassment and

humiliation, and thus constitute an unwarranted invasion of personal privacy.

45.) At the time that these records were reviewed, EOUSA

considered the passage of time and its effect on the privacy interests of third party

individuals in balancing the privacy and the public interests. It was determined that

the privacy interests are as strong and pertinent now as when the records were

created in 2001 through 2005, and that there is no public interest in these records

which would outweigh the privacy interests of these individuals.

46.) Every effort has been made to release all segregable information

without invading the privacy interests of third-party individuals named in these

records. The effort to release all segregable information includes releasing all

substantive information concerning Mr. Lopez unless it would reveal the identities

of persons who provided the information. EOUSA asserted Exemption (b)(7)(C) in

conjunction with Exemption (b)(6) in the following documents listed in Exhibit A:

1-9, 13-23, 25, 30, 32, 35-93, and 95. EOUSA also invoked Exemptions 7(C) and

6 to withhold the names of grand jury witnesses and other third parties in the grand

jury transcripts.

**Names and Signatures of State and Federal Law Enforcement Personnel**

47.) Exemption (b)(7)(C) has been asserted to protect the names of

DEA Special Agents and state law enforcement agents and support personnel, and

the signatures of state law enforcement personnel, who were responsible for

conducting, supervising, and/or maintaining the investigative activities reported in

this investigation. Publicity, adverse or otherwise, regarding any particular

investigation conducted by a state or federal law enforcement agents may seriously

impair their effectiveness in conducting future investigations. This privacy

consideration also protects these agents from unnecessary, unofficial questioning as

to the conduct of an investigation, whether or not they are currently employed by

the state or federal government. State and federal law enforcement agents conduct

official inquiries into violations of various criminal statutes and come into contact

with all strata of society and conduct searches and make arrests, both of which

result in reasonable, but nonetheless serious disruptions in the lives of individuals.

It is possible for a person targeted by such law enforcement action to carry a

grudge which may last for years, and to seek revenge against the agents involved in

the investigation. The publicity associated with the release of the identity of a law

enforcement agent in connection with a particular investigation could trigger

hostility towards the agent by such persons. Balancing this substantial privacy

interest against the public interest in disclosure, EOUSA could find no legitimate

public interest to be served in the disclosure of the identities of these law

enforcement agents in this investigation to the public because it will not shed light

on the operations and activities of the federal government.

48.) The names of USAO and state law enforcement support personnel have also been withheld pursuant to Exemption (b)(7)(C). Support personnel are assigned to handle tasks relating to criminal investigations. These individuals are in positions to access information concerning official law enforcement investigations. They could therefore become targets of harassing inquiries for unauthorized access to the details of a criminal investigation if their identities were released. The rationale for protecting the identities of federal and state law enforcement agents, as discussed in Paragraph 46, supra, also pertains to the identities of these support employees. EOUSA also balanced this substantial privacy interest against the public interest and determined that the privacy interest outweighs the public interest in disclosure because this information will not shed light on the operations and activities of the federal government. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to withhold the names and identifying information pertaining to federal and state law enforcement agents and support personnel in the following documents listed in Exhibit A: 1, 22-23, 32, 38-39, 42-43, 45-50, 60, 62-63, 65, 67, 70, 72-73, 76, 78, 81-86, 88-90, 93, and 95. EOUSA is also asserting Exemption 7(C), in conjunction with Exemption (b)(6), to protect the names of federal and state law enforcement personnel who may be identified in the grand jury material.

**Names and/or Identifying Information Pertaining to Third Parties
Who Provided Information to the Government**

49.) Exemption (b)(7)(C) has also been asserted to protect the names

and/or identifying information pertaining to individuals who assisted the

government by providing details related to the narcotics investigation of Mr.

Lopez. The identifying information pertaining to these individuals that EOUSA

withheld under Exemption (b)(7)(C) in conjunction with Exemption (b)(6) consists

of Social Security Numbers, home addresses and telephone numbers, business

addresses, dates of birth, places of residence, and a fax number.

50.) Information provided by private citizens during an interview

reflects some of the most productive investigative tools utilized by law

enforcement agencies. The largest roadblock in successfully obtaining the desired

information through an interview is the fear by the interviewee of his or her

identity possibly being exposed and, consequently, being harassed, intimidated or

threatened with legal or economic reprisal, or possible physical harm. In order to

surmount these obstacles, persons interviewed must be assured that their identities

will be held in the strictest confidence. EOUSA has attempted to release all

segregable portions of the information provided by these individuals without

revealing their identities. The government's continued access to private citizens

who are willing to provide pertinent facts in a particular investigation outweighs

any benefit to be derived from releasing the identities of these individuals. These individuals have a strong privacy interest in this information. Balancing this privacy interest against the public interest, EOUSA found no legitimate public interest to be served by releasing the identities of private citizens who provided information to the government because it would not shed light on the operations and activities of the USAO or other federal agencies. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to protect the names and identifying information pertaining to third parties who provided information to the government in the following documents listed in Exhibit A: 1-5, 15, 23, 30, 32, 36, 41, 45, 71, 75, and 90-91. EOUSA is also asserting Exemption 7(C), in conjunction with Exemption (b)(6), to protect the names and identifying information pertaining to third parties who provided information to the government and who may be identified in the grand jury material.

51.) In some instances certain information was inextricably intertwined with references to Mr. Lopez. However, EOUSA was able to segregate certain references and disclose them without creating the risk of revealing privacy-protected information of the other third party individuals discussed within.

52.) In addition, Mr. Lopez failed to provide EOUSA with authorization or consent to release otherwise privacy protected information from any of the third party individuals named in these records.

### Names and/or Identifying Information Pertaining
### To Third Parties Merely Mentioned

53.) Exemption (b)(7)(C) has also been asserted to protect the name, signature, home & business address, telephone number, age, occupation, spouse's name, court ID number, juror number, bank account number, driver's license number, gender, personal affiliation with Mr. Lopez, car title number and registration number, and employer's name and address, of those individuals who are only incidentally mentioned in these records. To release the identities of these third parties who are merely mentioned in an investigation would not shed any light on the government's performance of its statutory duties with respect to this investigation. However, the disclosure of their identities could cause unsolicited and unnecessary attention to be focused on these individuals and/or their family members. The mention of their names in the context of a federal narcotics investigation could cast them in an unfavorable or negative light if released to the public. Thus, these individuals have a strong privacy interest in the protection of such personal information. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who were merely mentioned in this investigation because it will not shed light on the operations and activities of the federal government. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to protect the names and identifying information pertaining to

third parties merely mentioned in the investigation in the following documents listed in Exhibit A: 6-9, 15-21, 25, 35, 37, 40, 44, 49, 51-59, 61, 66, 68, 71, 77, 79, 88-89, and 92. EOUSA is also asserting Exemption 7(C), in conjunction with Exemption (b)(6), to protect the names and identifying information pertaining to third parties who are merely mentioned in the grand jury material.

### Names and/or Identifying Information Pertaining To
### Third Parties of Investigative Interest to the Government

54.) EOUSA has asserted Exemption (b)(7)(C) to protect the names and identifying personal and non-public information concerning third-party individuals in whom the federal and/or state law enforcement agencies had an investigative interest during the course of this investigation. EOUSA is withholding the following personal information about these third-party individuals: their name, date of birth, address, details of their criminal history, gender, race, Social Security Number, and telephone number pursuant to Exemption (b)(7)(C), in conjunction with Exemption (b)(6).

55.) Being linked with any law enforcement investigation carries a strong negative connotation. To release the identities of these individuals to the public as subjects or suspects of a criminal investigation could subject them to harassment or embarrassment, as well as undue public attention. In balancing the privacy interest in this information against the public interest in disclosure,

EOUSA found no legitimate public interest in the release of personal, non-public information concerning these individuals who were of investigative interest to the government because it will not shed light on the operations and activities of the government. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) in the following documents listed in Exhibit A: 13-14, 22, 30, 50, 64, 69, 74, 80, 87, and 91. EOUSA is also asserting Exemption 6, in conjunction with Exemption (b)(7)(C), to protect the names and identifying information pertaining to third parties of investigative interest to the government who may be mentioned in the grand jury material.

## SEGREGABILITY OF NON-EXEMPT INFORMATION

56.) In this matter, all responsive information has been provided to Plaintiff and reasonably segregable information was disclosed after deletion of the exempt information. Each document was evaluated to determine if any information could be segregated and released. The documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document or without identifying a third party individual.

57.) Each step in the handling of Plaintiff's request has been entirely consistent with the EOUSA and the USAO's procedures adopted to insure an equitable response to all persons seeking access to records under the FOIA/PA. In sum, the EOUSA has properly responded to Plaintiff's FOIA request and has

provided Plaintiff with all of the reasonably segregable nonexempt information to which he is entitled.

I declare under penalty of perjury that the foregoing is true and correct and that Exhibits A through I attached hereto are true and correct copies.

Executed on *February 4*, 2008.

KAREN M. FINNEGAN
Attorney Advisor, EOUSA

**Exhibit A**

**Lopez v. Executive Office for United States Attorneys, Civil Action No. 1:07-cv-02002-RMU (FOIA No. 06-2619 (USAO DNH))**

**Glossary:**
"RIF"–released in full
"RIP"–released in part
"WIF"–withheld in full; reviewed for and not deemed segregable
"NS"–reviewed for and determined not segregable either because the document and/or information is categorically exempt or because no meaningful, intelligible portion would remain after redacting exempt information.
"USAO"–United States Attorney's Office
"AUSA"–Assistant U.S. Attorney
"1-S"–Document one of the Supplemental Release
"2-S"–Document two of the Supplemental Release

| DOC | PAGES | DOCUMENT DESCRIPTION | EXEMPT STATUS | JUSTIFICATION |
|---|---|---|---|---|
| 1 | 75 | Hand-written notes of trial testimony and witness interviews | WIF: b5, b6, b7C, j2 | Withheld hand-written notes of trial testimony and witness interviews taken by an AUSA or at his or her direction because they are protected by the attorney work product privilege, the names of DEA agents and local law enforcement personnel to protect against harassment and annoyance in the conduct of official duties and in private life, and the names of third parties of investigative interest and third parties merely mentioned to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document |
| 2 | 1 | Witness list | WIF: b6, b7C, j2 | Withheld the names of witnesses and their home and work addresses to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |

| | | | | |
|---|---|---|---|---|
| 3 | 1 | Hand-written note containing the names and business addresses of two witnesses | WIF: b6, b7C, j2 | Withheld the names and business addresses of two witnesses to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document |
| 4 | 1 | Hand-written list of witnesses to receive a trial subpoena | WIF: b6, b7C, j2 | Withheld the names and home addresses of witnesses to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document |
| 5 | 1 | Hand-written note containing witness's name, place of residence, and fax number | WIF: b6, b7C, j2 | Withheld a third party's name, place of residence, and fax number to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 6 | 1 | Hand-written jury panel list | WIF: b6, b7C, j2 | Withheld the names of jurors to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 7 | 1 | Hand-written list of names of individuals in the jury pool | WIF: b6, b7C, j2 | Withheld the names of third parties who were in the jury pool and the name and telephone number of a witness to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 8 | 15 | Computer printout of Jury Selection List | WIF: b5, b6, b7C, j2 | Withheld hand-written notations regarding potential jurors, which is protected by the attorney work product privilege, and the names of potential jurors, home addresses, age, occupation, spouse's name, court ID number and juror number to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 9 | 1 | Juror Excused List | WIF: b6, b7C, j2 | Withheld the names of excused jurors, court ID number, and juror number to protect against harassment or stigmatizing public attention. There is no reasonably segregable information contained in this document. |

| | | | | |
|---|---|---|---|---|
| 10 | 1 | Confidential Conflict of Interest Certification | WIF: b3 (5 U.S.C. App. 4 § 107(a)), j2 | Withheld form in its entirety as required pursuant to 5 U.S.C. Appendix 4 § 107(a), Title 1 of the Ethics in Government Act of 1978. There is no reasonably segregable information contained in this document. |
| 11 | 1 | Confidential Conflict of Interest Certification | WIF: b3 (5 U.S.C. App. 4 § 107(a)), j2 | Withheld form in its entirety as required pursuant to 5 U.S.C. Appendix 4 § 107(a), Title 1 of the Ethics in Government Act of 1978. There is no reasonably segregable information contained in this document. |
| 12 | 1 | Confidential Conflict of Interest Certification | WIF: b3 (5 U.S.C. App. 4 § 107(a)), j2 | Withheld form in its entirety as required pursuant to 5 U.S.C. Appendix 4 § 107(a), Title 1 of the Ethics in Government Act of 1978. There is no reasonably segregable information contained in this document. |
| 13 | 1 | Hand-written list of evidence | WIF: b5, b6, b7C, j2 | Withheld notes of evidence in criminal prosecution, which is protected by the attorney work product, the name of a third party of investigative interest to the government to protect against harassment or stigmatizing public attention. There is no reasonably segregable information contained in this document. |
| 14 | 2 | Hand-written notes of audiotaped conversations | WIF: b5, b6, b7C, j2 | Withheld notes pertaining to conversations taped during the conduct of a criminal investigation, which is protected by the attorney work product, the names of third parties of investigative interest to the government and third parties merely mentioned to protect against harassment or unwanted attention. There is no reasonably segregable information contained in this document. |
| 15 | 1 | Hand-written notes of a witness interview | WIF: b5, b6, b7C, j2 | Withheld notes of a witness interview, which is protected by the attorney work product privilege, and the names of the witness and third parties merely mentioned to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |

| | | | | |
|---|---|---|---|---|
| 16 | 3 | Hand-written notes pertaining to evidence | WIF: b5, b6, b7C, j2 | Withheld details of government's evidence, which is protected by the attorney work product privilege, the names of third parties mentioned in the investigation to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 17 | 1 | Hand-written notes of interview with local law enforcement officer | WIF: b5, b6, b7C, j2 | Withheld details of information provided to USAO in investigation, which is protected by the attorney work product privilege, and the names of third-party individuals mentioned in the investigation to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 18 | 1 | Hand-written notes of witness interview | WIF: b5, b6, b7C, j2 | Withheld details of information provided to USAO in investigation, which is protected by the attorney work product privilege, and the name of third-party individual mentioned in the investigation to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 19 | 8 | Computer printout of MA Registry of Motor Vehicles database | WIF: b5, b6, b7C, j2 | Withheld details of information printed from database, which is protected by the attorney work product privilege, and the names, home address, date of birth, car make, model, title number, and VIN number, Social Security Number, driver's license number, physical description, of third parties merely mentioned to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 20 | 9 | Copies of First Essex Bank deposit and withdrawal slips pertaining to an unidentified account | WIF: b5, b6, b7C, j2 | Withheld copies of bank records which were provided to the government during a criminal investigation, and which is protected by the attorney work product privilege, and third party/ies' account number(s) to protect against harassment or unwanted public attention. There is no reasonably segregable information contained in this document. |

| | | | | |
|---|---|---|---|---|
| 21 | 2 | Copies of two checks written on a third party's check account made payable to a third party | WIF: b5, b6, b7C, j2 | Withheld information provided to the government during a criminal investigation, which is protected by the attorney work product privilege, and the names of two third parties merely mentioned, and the business address and bank account number of a third party to protect against harassment or unwanted attention. There is no reasonably segregable information contained in this document. |
| 22 | 24 | Grand Jury Transcripts, dated August 16, 2001 | WIF: b3 (FRCP 6e), b6, b7C, j2 | Withheld details of testimony presented to a Federal Grand Jury pursuant to (b)(3), Federal Rule of Criminal Procedure 6(e), which prohibits disclosure of scope and inner workings of grand jury, and which is also protected by the attorney work product privilege, the names of DEA agents and local law enforcement personnel to protect against harassment and annoyance in the conduct of official duties and in private life, and the names of third parties of investigative interest to the government to protect against harassment and reprisal. There is no reasonably segregable information contained in this document. |
| 23 | 3 | Draft Witness List | WIF: b5, b6, b7C, j2 | Withheld draft document containing the names of the government's witnesses, which is protected by the attorney work product privilege, the names & places of residence for third party witnesses to protect against harassment or unwanted attention, and the names of federal and state law enforcement officials to protect against harassment and annoyance in the conduct of official duties and in private life. There is no reasonably segregable information contained in this document. |
| 24 | 3 | Draft Exhibit List | WIF: b5, j2 | Withheld draft document containing a list of proposed exhibits, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 25 | 1 | Hand-written note containing the name, address & telephone number of a third party | WIF:b6, b7C, j2 | Withheld the name, address & telephone number of a third party merely mentioned to protect against harassment or undue public attention. There is no reasonably segregable information contained in this document. |

| | | | | |
|---|---|---|---|---|
| 26 | 36 | Draft Jury Instructions | WIF:b5, j2 | Withheld draft jury instructions and prosecutor's hand-written comments, which are protected by the attorney work product and deliberative process privileges. There is no reasonably segregable information contained in this document. |
| 27 | 33 | Draft Jury Instructions | WIF:b5, j2 | Withheld draft jury instruction and prosecutor's hand-written comments, which are protected by the attorney work product and deliberative process privileges. There is no reasonably segregable information contained in this document. |
| 28 | 1 | Prosecutor's hand-written note | WIF: b5, j2 | Withheld prosecutor's comment regarding draft language in a court filing, which is protected by the attorney work product and deliberative process privileges. There is no reasonably segregable information contained in this document. |
| 29 | 1 | Confidential Conflict of Interest Certification | WIF:b3 (5 U.S.C. App. 4 § 107(a)),j2 | Withheld form in its entirety as required pursuant to 5 U.S.C. § 107(a), Title 1 of the Ethics in Government Act of 1978. There is no reasonably segregable information contained in this document. |
| 30 | 4 | Hand-written interview notes | WIF: b5, b6, b7C,j2 | Withheld details of information provided to the government in criminal investigation, which is protected by the attorney work product privilege, and the names of third parties of investigative interest and who provided information to the government to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 31 | 1 | Prosecutor's hand-written notes | WIF: b5, j2 | Withheld prosecutor's mental impressions, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |

| | | | | |
|---|---|---|---|---|
| 32 | 1 | GTA Fact Witness Trip Ticket | WIF: b6, b7C, j2 | Withheld a witness's name, home address and telephone number to protect against stigmatizing public attention or harassment, and the name of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. There is no reasonably segregable information contained in this document. |
| 33 | 1 | Prosecutor's hand-written notes taken at the final pretrial hearing | WIF: b5, j2 | Withheld details of hearing, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 34 | 1 | Hand-written notes regarding government's evidence | WIF: b5, j2 | Withheld list of evidence, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 35 | 1 | Hand-written notes of government's evidence | WIF: b5, b6, b7C, j2 | Withheld list of evidence obtained in criminal investigation, which is protected by the attorney work product privilege, and the names and addresses of third party individuals merely mentioned in the investigation to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 36 | 2 | Prosecutor's hand-written trial notes | WIF: b5, b6, b7C, j2 | Withheld notes of the defense counsel's opening statement and witness testimony, which is protected by the attorney work product privilege, and the name of a witness to protect against harassment and undue public attention. There is no reasonably segregable information contained in this document. |
| 37 | 4 | Copies of photographs | WIF: b6, b7C, j2 | Withheld intimate photographs of a third party to protect against stigmatizing public attention or harassment. There is no reasonably segregable information contained in this document. |
| 38 | 1 | Hand-written note pertaining to witness vouchers | RIP: b6, b7C, j2 | Withheld the names of two USAO employees to protect against harassment and annoyance in the conduct of official duties and in private life. |

| | | | | |
|---|---|---|---|---|
| 39 | 1 | Wallace Press Reprographics invoice date March 16, 2004 | RIP: b6, b7C, j2 | Withheld the name of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. . |
| 40-S | 1 | Copy of First Essex Bank receipt dated July 27, 2001 (Supplemental Release) | RIP: b6, b7C, j2 | Withheld the name, date of birth and occupation of third party merely mentioned to protect against stigmatizing public attention or harassment. |
| 41 | 6 | First Essex Bank computer printout of account history dated July 27, 2001 | RIP: b6, b7C, j2 | Withheld the names of bank employees to protect against stigmatizing public attention or harassment. |
| 42 | 1 | State of New Hampshire Arrest Report dated October 30, 1998 | RIP: b6, b7C, j2 | Withheld signatures of state law enforcement personnel to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 43 | 1 | DOJ, Office of the Attorney General New Hampshire Drug Task Force Impounded Vehicle Inventory dated September 28, 1998 | RIP: b6, b7C, j2 | Withheld signature of a state law enforcement official to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 44 | 2 | Computer printouts pertaining to visitor authorization and inmate access dated October 23, 2002 | RIP: b6, b7C, j2 | Withheld the name, driver's license number, gender, date of birth, home address and telephone number, relationship to Mr. Lopez, and PAN number of third parties merely mentioned and who were approved to visit Mr. Lopez to protect against harassment and undue public attention. |
| 45 | 2 | Fact Witness Voucher forms dated February 10 and 11, 2003 | RIP: b6, b7C, j2 | Withheld witness names & signatures, Social Security Numbers, home addresses and telephone numbers to protect against harassment and undue public attention, and the signature of USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 46 | 1 | Criminal Docket cover sheet | RIP: b6, b7C, j2 | Withheld the name of a DEA case agent to protect against harassment and annoyance in the conduct of official duties and in private life. |

| | | | | |
|---|---|---|---|---|
| 47 | 1 | Computer printout of Portsmouth New Hampshire Police Department narrative statement dated July 26, 2001 | RIP:b6, b7C, j2 | Withheld the names of local law enforcement personnel to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 48 | 1 | Computer printout of Portsmouth New Hampshire Police Department narrative statement dated July 26, 2001 | RIP: b6, b7C, j2 | Withheld the names of local law enforcement personnel to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 49 | 1 | Portsmouth New Hampshire Police Department Arrest Report dated July 25, 2001 | RIP: b6, b7C, j2 | Withheld the names of local law enforcement personnel to protect against harassment and annoyance in the conduct of official duties and in private life, and the name of a third party merely mentioned to protect against stigmatizing public attention or harassment. |
| 50 | 1 | New Hampshire Drug Task Force Initial Investigation Report dated September 28, 1998 | RIP: b6, b7C, j2 | Withheld the name of a local law enforcement personnel to protect against harassment and annoyance in the conduct of official duties and in private life, and the name, date of birth, race, gender, age, home address and criminal charge of a third party of investigative interest to protect against harassment or reprisal. |
| 51 | 1 | New Hampshire Department of Corrections Approved Visitors computer printout dated October 23, 2002 | RIP: b6, b7C, j2 | Withheld the names, home addresses, telephone numbers, driver's license numbers, and relationship with Mr. Lopez of third parties merely mentioned to protect against harassment or undue public attention, and the name of a state law enforcement official to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 52 | 1 | MA Registry of Motor Vehicles Application Form | RIP: b6, b7C, j2 | Withheld the name & signature, home address, driver's license number, and date of birth of a third party merely mentioned to protect against harassment or undue public attention. |
| 53 | 1 | Bill of Sale dated November 2, 1999 | RIP: b6, b7C, j2 | Withheld the name, home address, and telephone number of third party merely mentioned to protect against harassment or undue public attention. |

| | | | | |
|---|---|---|---|---|
| 54 | 1 | MA Registry of Motor Vehicles Application Form | RIP: b6, b7C, j2 | Withheld the name & signature of a third party merely mentioned to protect against harassment or undue public attention. |
| 55 | 1 | MA Assignment of Certificate of Title By Owner Form dated November 2, 1999 | RIP: b6, b7C, j2 | Withheld the name & signature and home address of a third party merely mentioned to protect against  harassment or undue public attention. |
| 56 | 1 | SAAB Gary Blake Form dated December 12, 1996 | RIP: b6, b7C, j2 | Withheld the signature of a SAAB Gary Blake employee to protect against  harassment or undue public attention. |
| 57 | 1 | MA Application for Title Form | RIP: b6, b7C, j2 | Withheld the name & signature and home address of a third party merely mentioned, and the signature of a SAAB Gary Blake employee to protect against harassment or undue public attention. |
| 58 | 1 | MA Assignment of Title Form | RIP: b6, b7C, j2 | Withheld the name & signature and home address of two third parties merely mentioned to protect against  harassment or undue public attention. |
| 59 | 1 | MA Certificate of Title dated February 25, 1997 | RIP: b6, b7C, j2 | Withheld third-party owner's name and home address to protect against harassment or undue public attention. |
| 60 | 1 | Fax cover sheet dated November 22, 2005 | RIP: b6, b7C, j2 | Withheld name of a local law enforcement official to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 61 | 1 | Correspondence between the USAO and a third party dated November 4, 2005 | RIP: b6, b7C, j2 | Withheld the name and mailing address of a third party merely mentioned to protect against harassment or undue public attention. |
| 62 | 1 | Correspondence between the USAO and Essex County Registry of Deeds dated September 2, 2003 | RIP: b6, b7C, j2 | Withheld the name of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. |

| | | | | |
|---|---|---|---|---|
| 63 | 1 | Correspondence between the USAO and defense counsel dated July 14, 2003 | RIP: b6, b7C, j2 | Withheld the name of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 64 | 1 | Fax cover sheet dated February 7, 2003 | RIP: b6, b7C, j2 | Withheld the name of a third party of investigative interest to protect against harassment and reprisal. |
| 65 | 1 | Fax cover sheet dated February 6, 2003 | RIP: b6, b7C, j2 | Withheld the name & signature of a state employee in the conduct of official duties and in private life. |
| 66 | 1 | MA registry of Motor Vehicles title history printout | RIP: b6, b7C, j2 | Withheld the name, title number, home address, odometer reading, register number of two third parties merely mentioned to protect against harassment and undue public attention. |
| 67 | 1 | Correspondence between the USAO and MA Registry of Motor Vehicles dated February 6, 2003 | RIP: b6, b7C, j2 | Withheld the name of state employee to protect against harassment and undue public attention. |
| 68 | 1 | Fax cover sheet dated January 31, 2003 | RIP: b6, b7C, j2 | Withheld the name of a third party merely mentioned to protect against harassment and undue public attention. |
| 69 | 2 | Correspondence between the USAO and defense counsel dated January 23, 2003 | RIP: b6, b7C, j2 | Withheld the name of a third party of investigative interest and details of criminal history to protect against harassment and reprisal. |
| 70 | 1 | Fax cover sheet dated July 26, 2001 | RIP: b6, b7C, j2 | Withheld the name of a DEA agent and the name of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 71 | 1 | Correspondence between First Essex Bank and the USAO dated July 30, 2001 | RIP: b6, b7C, j2 | Withheld the name of a bank employee to protect against harassment and undue public attention. |

| | | | | |
|---|---|---|---|---|
| 72 | 1 | Criminal Opening Form dated July 26, 2001 | RIP; b6, b7C, j2 | Withheld the name and of a DEA agent and of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 73 | 1 | Criminal docket cover sheet | RIP; b6, b7C, j2 | Withheld the name of a DEA case agent to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 74 | 1 | Correspondence between the USAO and defense counsel dated January 7, 2003 | RIP; b6, b7C, j2 | Withheld the name of a third party of investigative interest and details of criminal history to protect against harassment and reprisal |
| 75 | 1 | Indictment/Information Approval Form | RIP; b6, b7C, j2 | Withheld the name of a third party who provided information to the government to protect against harassment or reprisal. |
| 76 | 1 | Fax cover sheet | RIP; b6, b7C, j2 | Withheld information pertaining to the investigative role of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 77 | 7 | Copies of seven checks written from a third party's check account and made payable to a third party | RIP; b6, b7C, j2 | Withheld the names of two third parties merely mentioned, and the business address and account number of one third party to protect against harassment and undue public attention. |
| 78 | 1 | Fax cover sheet dated October 30, 2002 | RIP; b6, b7C, j2 | Withheld the name of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 79-S | 1 | Copy of a First Essex Bank receipt dated July 27, 2001 (Supplemental Release) | RIP; b6, b7C, j2 | Withheld the name, date of birth, and occupation of a third party merely mentioned to protect against harassment and undue public attention. |
| 80 | 2 | Correspondence between the USAO and defense counsel dated February 4, 2003 | RIP; b6, b7C, j2 | Withheld the name of a third party of investigative interest and details of criminal history to protect against harassment and reprisal |

| | | | | |
|---|---|---|---|---|
| 81 | 6 | Criminal Case History Report dated June 4, 2003 | RIP: b6, b7C, j2 | Withheld the name of a DEA agent to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 82 | 4 | Criminal Case History Report dated April 3, 2007 | RIP: b6, b7C, j2 | Withheld the names of a DEA agent and government employee to protect against harassment and annoyance in the conduct of official duties and in private life, and the name of a court employee to protect against harassment or undue public attention. |
| 83 | 4 | Criminal Case History Report dated November 3, 2006 | RIP: b6, b7C, j2 | Withheld the name of a DEA agent to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 84 | 3 | Criminal Case History Report dated April 27, 2006 | RIP: b6, b7C, j2 | Withheld the name of a DEA agent to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 85 | 2 | Criminal Case History Report dated February 15, 2006 | RIP: b6, b7C, j2 | Withheld the name of a DEA agent to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 86 | 11 | Criminal Case History Report dated February 14, 2006 | RIP: b6, b7C, j2 | Withheld the name of a DEA agent to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 87 | 2 | Portsmouth New Hampshire Police Department Arrest Report dated January 27, 2003 | RIP: b6, b7C, j2 | Withheld the name, home address, gender, race, Social Security Number, and home telephone number of a third party of investigative interest to protect against harassment or reprisal. |
| 88 | 1 | Internal fax cover sheet dated February 3, 2003 | WIF: b5, b6, b7C, j2 | Withheld a note describing actions taken by a USAO employee at the direction of an AUSA, which is protected by the attorney work product privilege, the name of the USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life, and the name of a third party merely mentioned to protect against harassment or undue public attention. There is no reasonably segregable information contained in this document. |

| # | | Description | Exemptions | Justification |
|---|---|---|---|---|
| 89 | 2 | Original and copy of an internal fax cover sheet dated February 5, 2003 | WIF: b5, b6, b7C, j2 | Withheld comment of USAO employee working at the direction of an AUSA, which is protected by the attorney work product privilege, and the name of the USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life, and the name of a third party merely mentioned to protect against harassment or undue public attention. There is no reasonably segregable information contained in this document. |
| 90 | 1 | Note between USAO employees regarding two witnesses dated March 11, 2003 | WIF: b5, b6, b7C, j2 | Withheld contents of note pertaining to two witnesses, which is protected by the attorney work product privilege, and the names of two USAO employees to protect against harassment and annoyance in the conduct of official duties and in private life, and the name of a witness to protect against harassment or undue public attention. There is no reasonably segregable information contained in this document. |
| 91 | 1 | Correspondence between the USAO and defense counsel dated February 6, 2003 | RIP: b6, b7C, j2 | Withheld the name of a third party of investigative interest to protect against harassment and reprisal, the name of a potential witness to protect against harassment or undue public attention, and the name of a local law enforcement official to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 92 | 1 | Assignment of Title form | RIP: b6, b7C, j2 | Withheld the names & signatures of two third parties merely mentioned and one individual's employer's name & business address to protect against harassment and undue public attention. |
| 93 | 1 | Fax cover sheet dated December 2, 2001 | RIP: b6, b7C, j2 | Withheld the name of a DEA agent to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 94 | 17 | AUSA's legal research | WIF: b5, j2 | Withheld contents of legal research conducted by the AUSA, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |

| | | | | |
|---|---|---|---|---|
| 95 | 1 | Hand-written note regarding a court opinion | WIF: b6, b7C, j2 | Withheld contents of note identifying case law, which is protected by the attorney work product privilege, and the name of a USAO employee to protect against harassment and annoyance in the conduct of official duties and in private life. There is no reasonably segregable information contained in this document. |
| 96 | 4 | Draft indictment | WIF: b5, j2 | Withheld contents of draft indictment, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 97 | 2 | Draft jury verdict form | WIF: b5, j2 | Withheld contents of draft jury verdict form, which is protected by attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 98 | 2 | Draft verdict form regarding Count One | WIF: b5, j2 | Withheld contents of draft verdict form, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 99 | 2 | Draft notice filing | WIF: b5, j2 | Withheld contents of draft notice filing, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| | 40 | Grand Jury Transcripts, Subpoenas and Exhibits | WIF: b3 (FRCP 6e); b5, b6, b7C, j2 | Withheld grand jury subpoenas and transcripts of grand jury testimony in their entireties pursuant to (b)(3), Federal Rule of Criminal Procedure 6(e), which prohibits disclosure of scope and inner workings of grand jury, and the names and identifying information pertaining to individuals who were subpoenaed and who testified in order to protect against potential for retaliation, harassment and undue embarrassment. There is no reasonably segregable information contained in these documents. |
| 1-S | 1 | Portsmouth New Hampshire Police Department Narrative Report dated January 27, 2003 (Supplemental Release) | RIP: b6, b7C, j2 | Withheld the names of local law enforcement personnel to protect against harassment and annoyance in the conduct of official duties and in private life. |

| 2-S | 3 | Fax cover sheets (Supplemental Release) | RIF | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

August 7, 2006

RECEIVED
2006 AUG 14  AM 11: 16
DEPT. OF JUSTICE/EOUSA
FCIA/PRIVACY STAFF

Carlos Lopez
Reg. No. 03010-049
FCI-Fort Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

Executive Office for the
United States Attorneys
Freedom of Information/Privacy Act Unit
600 E Street, N.W., Room 7300
Washington, D.C. 20530

Re: FREEDOM OF INFORMATION ACT REQUEST

Dear Sir or Madam:

Under the provisions of the Freedom of Information Act, 5 U.S.C. § 552, I am requesting access to all and any records both maintained and nonmaintained on file relating to my arrest and prosecution on federal narcotic and firearm violations in the State of New Hampshire. I was arrested on July 25, 2001.

My federal district court docket number reads: 01-79-01-M. My date of birth is July 22, 1978, and my social security number reads: 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. My case was prosecuted by Mark E. Howard.

In particular, I seek copies of Special Agent (SA) Steven Story, SA Norman Houle, and SA Edward Bals' investigation reports made on this matter. The aforementioned agents were part of the Drug Enforcement Administration in conjunction with New Hampshire's Attorney General Drug Task Force.

If there are any fees for searching for, or copying, the records I have requested, please supply the records without informing me if the fees do not exceed fifty dollars ($50.00).

If all or any part of this request is denied, please cite the specific exemption(s) you think justifies your refusal to release the information, and inform me of the appeal procedures available to me under the law.

I enclosed copies of my inmate identification card along with a Certificate of Identity so you will be able to verify your writer and fulfill my request. Since my requested records/documents are presumptively material to my criminal case, do not redact any portion(s) of the record.



GOVERNMENT
EXHIBIT

Letter to Executive office for the United States Attorneys
August 7, 2006
Page 2


    I would appreciate you handling this request as quickly as possible and I look forward to hearing from you within ten days as the law stipulates.

                            Sincerely,

                            Carlos Lopez


CJL
enclosures

U.S. Department of Justice

## Certification of Identity



Privacy Act Statement. In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]    Carlos Jose Lopez, j.r.

Current Address    Federal Correctional Institution Fort Dix, P.O. Box 2000, FOrt Dix, NJ 08640

Date of Birth    July 22, 1978

Place of Birth    Lawrence, Massachusetts (U.S.A)

Social Security Number [2]    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

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [3]    _____    Date    8/7/06

## Optional: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. § 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____

(Print or Type Name)

[1] Name of individual who is the subject of the record sought.
[2] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[3] Signature of individual who is the subject of the record sought.

FORM APPROVED OMB NO. 1103-0016
EXPIRES 1/31/98

FORM DOJ-361
FEB. 95





U.S. Department    Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Unit
600 E Street, N.W., Room 7300
Washington, D.C. 20530          AUG 2 9 2006
202-616-6757   Fax 202-616-6478

Requester: Carlos Lopez                    Request Number:    06-2619

Subject: Self

Dear Requester:

        The Executive Office for United States Attorneys (EOUSA) has received your Freedom
of Information Act and/or Privacy Act request. The EOUSA is the official record keeper for all
records located in this office and the various United States Attorney's offices.

        Some of the information you requested originates with another Federal agency, rather
than EOUSA or the U.S. Attorneys offices. For this information, please contact the following
agencies directly at their addresses:

                    Drug Enforcement Administration
                Freedom of Information Operations Unit
                        Department of Justice
                        700 Army Navy Drive
                        Arlington, VA 22202

        We are continuing to process those portions of your request which pertain to records in
the possession of the EOUSA or U.S. Attorneys' offices.

        You may appeal my decision in this matter by writing within sixty (60) days from the date
of this letter, to:
                    Office of Information and Privacy
                    United States Department of Justice
                1425 New York Ave., N.W., Suite 11050
                    Washington, D.C. 20530-0001

        Both the envelope and the letter of appeal must be clearly marked "Freedom of
Information Act/Privacy Act Appeal."

        After the appeal has been decided, you may have judicial review by filing a complaint in
the United States District Court for the judicial district in which you reside or have your principal
place of business; the judicial district in which the requested records, if any, are located; or in the
District of Columbia.

                        Sincerely,

                        William G. Stewart II
                        Acting Assistant Director

                                    Form No. 042A - 1/06







**U.S. Departmen ⁀ Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Staff*  AUG 2 9 2006
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

Request Number:  06-2619  Requester: Carlos Lopez

Subject: Self/DNH

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions, for example, Project Requests take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR § 16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 CFR § 16.11, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

Sincerely,

*William G. Stewart*

William G. Stewart II
Acting Assistant Director

Form No. 001 -1/06



September 7, 2006

RECEIVED
2006 SEP 14 PM 2: 18
DEPT. OF JUSTICE/EOUSA
FOIA/PRIVACY STAFF

Carlos Lopez
Reg. No. 03010-049
FCI-Fort Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

William G. Stewart II
Acting Assistant Director
Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C 20530

Re: 06-2619

Dear Mr. Stewart:

I am in receipt of your letter dated August 29, 2006, in which you advised me that my FOI Request was received and being processed.

It is important to note that I am willing to pay for all costs associated with my immediate request. However, I wish to ask for some clarification on how your agency handles FOI Requests.

I wish to know if it is possible to submit (2) separate requests at the same time? That is, will I be able to make a Project Request and a simple request simultaneously? Your reply to my inquiry will be greatly appreciated and helpful.

In the meanwhile, I wish to inform you that my Freedom of Information Act request under my immediate request number: 06-2619 should be treated as a Project Request. I am requesting for "all information about myself in [my] criminal case file."

Thank you for your attention, as well as your cooperation on this matter. I look forward to hearing from you.

Sincerely,

Carlos Lopez

CJL



610

April 19, 2007

RECEIVED
2007 APR 27 PM 3:19
[illegible stamp]

Carlos Lopez
Reg. No. 03010-049
FMC-Devens, Unit H-A, P.O. Box 879
Ayer, Massachusetts 01432

William G. Stewart, II
Assistant Director
Executive Office of United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530

**Request No. 06-2619**
**Requester: Carlos Lopez**
**Subject: Self/DNH**

Dear Mr. Stewart:

    Please take notice of my new mailing address provided above.
I recently received an unexpected transfer from FCI-Fort Dix to
this facility.

    I respectfully request that you provide me with a status
update on the above mentioned FOIA/PA request, which was filed in
your office on August 29, 2006.

    Thank you for your attention, as well as your cooperation on
this matter. Do acknowledge receipt of my immediate change of
address.

                        Sincerely,

                        Carlos Lopez

CJL



August 14, 2007

Carlos Lopez
Reg. No. 03010-049
FMC-Devens, Unit H-A
P.O. Box 879
Ayer, Massachusetts 01432

William G. Stewart, II
Assistant Director
Executive Office of United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530

**Request No. 06-2619**
**Requester: Carlos Lopez**
**Subject: Self/DNH**

Dear Mr. Stewart:

I respectfully urge you to give me an update on my FOIA/PA request that was filed on August 29, 2006.

On April 19, 2007, I supplied you with a notice of my change of address, to where no reply ever came. You informed me that my "Project Request" will be disclosed within nine months from my date of filing. You are presently in default and have not replied to my inquiries. If I do not hear from you I will be forced to bring this matter before the United States District Court.

Thank you for your attention on this matter. I look forward to hearing from you.

Sincerely,

Carlos Lopez

CJL





**U.S. Departme~~ ~f Justice**

*Executive Office for Un..ed States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478  (www.usdoj.gov/usao)*

Requester:  Carlos Lopez                          Request Number:  06-2619

Subject of Request: Self/DH

Dear Requester:                                        DEC 2 1 2007

    Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices.

    To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act. 28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter is a [X] partial [   ] full denial.

    305   page(s) are available to be released in full (RIF);
    72   page(s) are available to be released in part (RIP);
    276   page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

    The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

| Section 552 | | | Section 552a |
|---|---|---|---|
| [   ] (b)(1) | [   ] (b)(4) | [   ] (b)(7)(B) | [X] (j)(2) |
| [   ] (b)(2) | [X] (b)(5) | [X] (b)(7)(C) | [   ] (k)(2) |
| [X] (b)(3) | [   ] (b)(6) | [   ] (b)(7)(D) | [   ] (k)(5) |
| F.R.Cr.P 6(e) | [   ] (b)(7)(A) | [   ] (b)(7)(E) | [   ] _____ |
| 5 U.S.C. App. 4§107 (a) | | [   ] (b)(7)(F) | |

    [X] This office is withholding grand jury material which is retained in the District.

    [ X ]   After reviewing all the documents, we have determined that we can make a partial release. You previously agreed to pay search and/or copying costs. A $_____ review, $  112.00   search, and/or $ 28.10   copying fee is being assessed for these records.



**GOVERNMENT
EXHIBIT**

We are forwarding these records, please send a check or money order for
 140.10 , payable to the Treasury of the United States. Payment should be mailed to the Freedom
of Information Act/Privacy Act Staff, 600 E Street, N.W., Room 7300, Washington, D.C. 20530.
**If payment is not received within 30 days from the date of this letter, any future requests
for records will be rejected until payment is received.**

[X ] ____331____ page(s) originated with another government component. **These records were
found in the U.S. Attorney's Office files and may or may not be responsive to your request.** Once
we have received the above payment, these records will be referred to the following component(s) listed
for review and direct response to you:  Drug Enforcement Administration-305 pgs; Federal Bureau of
Investigation-6pgs; Department of Veterans Affairs-2pgs; Alcohol, Tobacco, and Firearms- 9pgs; and
United States Probation Office-5pgs .

[X]    There are public records which may be obtained from the clerk of the court or this
office, upon specific request. If you wish to obtain a copy of these records, you must submit a new
request. These records will be provided to you subject to copying fees.

[  ]    Please note that your original letter was split into separate files ("requests"),
for processing purposes, based on the nature of what you sought. Each file was given a separate Request
Number (listed below), for which you will receive a separate response:

_____

[  ]   See additional information attached.

This is the final action on this above-numbered request. You may appeal this decision on this
request by writing within 60 days from the date of this letter to the **Office of Information and Privacy,
United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-
0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the
results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court,
28 C.F.R. § 16.9.

Sincerely,

*Karen M. Finnegan for*

William G. Stewart II
Assistant Director

Enclosure(s)

(Page 2 of 2)
Form No. 021 - fee/bill - 3/07

**EXPLANATION OF EXEMPTIONS**

**FOIA: TITLE 5, UNITED STATES CODE, SECTION 552**

(b) (1)     (A) specifically authorized under criteria established by and Executive order to be kept secret in the in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(b)(2)     related solely to the internal personnel rules and practices of an agency;

(b)(3)     specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)     trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)     inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than in litigation with the agency;

(b)(6)     personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion personal privacy;

(b)(7)     records or information compiled for law enforcement purposes, but only the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

(b)(8)     contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)     geological and geophysical information and data, including maps, concerning wells.

**PRIVACY ACT: TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)     information complied in reasonable anticipation of a civil action proceeding;

(j)(2)     material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, reduce crime or apprehend criminals;

(k)(1)     information which is currently and properly classified pursuant to Executive Order 12356 in the interest of national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)     investigatory material complied for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)     material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)     required by statute to be maintained and used solely as statistical records;

(k)(5)     investigatory material compiled solely for the purpose of determining suitability eligibility, or qualification for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his identity would be held in confidence;

(k)(6)     testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)     material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his identity would be held in confidence.

## ADDENDUM TO THE EXPLANATION OF EXEMPTION SHEET

☑ Rule 6(e) of the Federal Rules of Criminal Procedure pertains to the Federal Grand Jury, its integrity and the
surrounding the Jury.

☐ Under the Freedom of Information Act, an agency has no discretion to release any record covered by an injunction,
protective order, or court seal which prohibits disclosure. See GTE Sylvania, Inc. v. Consumers Union, 445 U.S.
386-387 (1980); See also Robert Tyrone Morgan v. U.S. Dept. of Justice, 923 F.2d 195 (D.C. Cir. 1991).

## SUPPLEMENTAL PAGE PERTAINING TO PRESENTENCE
## INVESTIGATION REPORTS

[☑]    A copy of your Presentence Investigation Report (PSR) has been found in the material
located in a United States Attorney's Office. It appears that you are an inmate in a Federal
correctional facility, which is under the jurisdiction of the Bureau of Prisons. Access to your
PSR therefore will be granted in accordance with the enunciated policy of the Bureau of Prisons.

The Bureau of Prisons policy with respect to Pre-Sentence Reports is that effective
November 2, 2002, for safety and security reasons, inmates in Federal correctional facilities may
not obtain or possess photocopies of their Pre-Sentence Reports (See Reissued Program
Statement No. 1351.05, Release of Information (September 19, 2002)). However, their policy
provides you with a reasonable opportunity to access and review your PSR locally. The
procedure is to make a request through your Unit Team to access and review your PSR as
provided by the above-referenced Program Statement. If you have any further questions about
the Bureau of Prisons policy, please contact your Unit Team.



**U.S. Department of Justice**

*Executive Office for U.. I States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478  (www.usdoj.gov/usao)*

To:   **Drug Enforcement Administration-305 pgs; Federal Bureau of Investigation-6pgs;**
**Department of Veterans Affairs-2pgs; Alcohol, Tobacco, and Firearms- 9pgs; and United**
**States Probation Office-5pgs .** ****Please note. This case is in Litigation.

Requester:  Carlos Lopez                              Requester Number:  06-2619

Subject of Request:  Self/DH

Dear FOIA/PA Contact Person:

DEC 2 1 2007

        The enclosed Freedom of Information Act/Privacy Act request was received by this
office.  The paragraphs checked below apply:

1.    [  ]    As your office may have records responsive to this request, we are referring it to you for
             a direct response to the requester.

2.    [X]    While processing this request, we located the enclosed records which originated in your
             office.  These records were found in the U.S. Attorney's Office files and may or may not
             be responsive to the request.  We are referring   See Above   page(s) of material and a
             copy of the request to you for a direct response to the requester.

3.    [  ]    This office is also providing _____ page(s) of documents under a cover page
             titled "Background Information".  The attached records are provided to your agency to
             assist in processing your records.  These are not part of the referred records and should
             be kept as administrative records in this referral.

        A copy of our final determination letter is also enclosed for your reference.  Please note
we have charged the requester $    140.10       for search/duplication costs incurred in the
processing of this request.

        We have notified the requester of this referral.

        If you have any questions about this matter, please contact the FOIA/PA processor
named below.

                                        Sincerely,

                                        Karen W. Finnegan for

                                        William G. Stewart II
                                        Assistant Director

Name:   Courtney Griffith

Phone:  (202) 616-6760
Enclosure(s)

Form No. 007 - 3/07

GOVERNMENT
EXHIBIT
1

Note: EOUSA is referring documents that includes correspondence/reports on your agency's letterhead, information contained on one of your agency's forms, or documents that have some indication that the information originated in one of the databases that your agency maintains. Certain documents are being referred to your agency because they appear to be part of your investigatory records even though the documents originated in a state or local law enforcement agency.

     **PLEASE NOTE**: This FOIA/PA request is currently the subject of litigation in the U.S. District Court for the District of Columbia, captioned <u>Lopez v. EOUSA</u>, Civil Action No. 07-2002 (RMB).

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

AUGUSTIN AGUAYO,                           )
                                           )
              Petitioner-Appellant,        )
                                           )
         v.                                )    Docket No. 06-5241
                                           )
FRANCIS J. HARVEY,                         )
                                           )
              Respondent-Appellee.         )
_____        )


DECLARATION OF CAPTAIN RICKEY J. TORRES

Pursuant to 28 U.S.C. ¶ 1746, I, Captain Rickey J. Torres, make the following declaration in the above cited case:

I am the Rear Detachment Commander for 1st Battalion, 18th Infantry Regiment located in Schweinfurt, Germany. I took command of the Rear Detachment on August 10, 2006, when the unit deployed to Iraq. I am the Commander for Specialist Augustin Aguayo.

On September 1, 2006, Specialist Aguayo failed to report for the movement of his unit to Iraq and departed without the authority of his unit. On September 26, 2006, Specialist Aguayo turned himself in to the Military Police at Fort Irwin, California. I initiated paperwork to place Specialist Aguayo in pretrial confinement. On September 29, 2006, a Military Magistrate found that continued pretrial confinement was warranted. On October 2, 2006, Specialist Aguayo was escorted from Fort Irwin, California back to Germany, and was placed in pretrial confinement at Manheim Confinement Facility in Manheim, Germany.

On October 4, 2006, I preferred court-martial charges against Specialist Agauyo. I preferred one specification of desertion with the intent avoid hazardous duty or to shirk

important service in violation of Article 85 of the Uniform Code of Military Justice ("U.C.M.J.") and one specification of missing movement in violation of Article 87 of the U.C.M.J. An Article 32 pretrial investigation hearing is currently scheduled for October 12, 2006.

I do declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed October 10, 2006, at Schweinfurt, Germany.

Rickey J. Torres
Captain, U.S. Army
Commander, Rear Detachment
1st Battalion, 18th Infantry Regiment



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX:  616-6478  (www.usdoj.gov/usao)*

Requester:  Carlos Lopez                    Request Number:  06-2619

Subject of Request: Self/DH

FEB - 4 2008

Dear Requester:

This letter constitutes a supplemental reply from the Executive Office for United States Attorneys, the official recordkeeper for all records located in this office and the various United States Attorney's offices.

The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act. 28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter is a [X] partial [   ] full denial.

___3___ page(s) are available to be released in full (RIF);
___3___ page(s) are available to be released in part (RIP);
_____ page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

|  Section 552 | | | Section 552a |
|---|---|---|---|
| [   ] (b)(1) | [   ] (b)(4) | [   ] (b)(7)(B) | [X] (j)(2) |
| [   ] (b)(2) | [   ] (b)(5) | [X] (b)(7)(C) | [   ] (k)(2) |
| [   ] (b)(3) | [   ] (b)(6) | [   ] (b)(7)(D) | [   ] (k)(5) |
| _____ | [   ] (b)(7)(A) | [   ] (b)(7)(E) | [   ] _____ |
| _____ | | [   ] (b)(7)(F) | |

Although this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to advise you that you may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)



