**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RECEIVED

JUN 1 3 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CARLOS LOPEZ
      Plaintiff,

v.                  Civil Action No. 1:07-cv-02002-RMU

EXECUTIVE OFFICE FOR
UNITED STATES ATTORNEYS
      Defendants, _____ /

## AFFIDAVIT OF CARLOS LOPEZ

NOW COMES Carlos Lopez, and swears and affirms the following:

1) I, Carlos Lopez, formerly of Lawrence, Massachusetts, and presently incarcerated in Federal Medical Center Devens, located in Ayer, Massachusetts, am the Plaintiff in the above captioned civil action. I am 29 years of age and willfully submit this affidavit to explain to the Honorable Court how the United States Government violated my Constitutional rights.

2) On July 25, 2001, a State of New Hampshire arrest warrant was executed and I was arrested in Portsmouth, New Hampshire. The arrest warrant was founded on statements made by confidential source, Jennifer Webber, who was working for Captain David Kretchmar of the Somersworth Police Department. See N.H. arrest warrant.

3) Subsequently, I was charged with narcotic and firearm violations. I plead not guily to the charges and in February 2003, I exercised by Constitutional right to a jury trial. The federal officers involved with the investigation of my case were DEA Special Agent (SA) Steven Story, (SA) Norman Houle, and (SA) Edward Bals.

(1)

4) I, Carlos Lopez, attest that during my criminal trial, the government presented their confidential source, Jennifer Webber, as a disinterested witness. During both direct and cross-examinations, Ms. Webber was asked on at least eight (8) separate occasions if there were any "deals" or if she was going to benefit from her cooperation with the government. (TM2/44-46, 66, 68-69, 77, 79)* <u>See</u> Exhibit 1 (Trial transcripts).

5) Ms. Webber repeatedly denied she either received or was going to receive any benefits. Ms. Webber testified in the capacity of a concerned citizen who agreed to work as a confidential informant for Captain David Kretchmar solely because she wanted to help law enforcement. (TM2/77-78)

6) I, Carlos Lopez, attest that during my criminal trial Ms. Webber was questioned on both direct and cross-examination about the disposition of her felony ecstasy case. Ms. Webber testified that her felony ecstasy case was dismissed as a result of an illegal search of her pocketbook. (TM2/45, 70)

7) I, Carlos Lopez, attest that while Ms. Webber was cooperating with the government she had two (2) felony cases pending in Strafford Superior Court, and her house had previously been raided by federal and local authorities. On April 22, 1999, Ms. Webber was indicted for a felony theft offense. On March 29, 2001, Ms. Webber was arrested on a felony drug offense while on bail from Strafford County Superior Court for previous theft offense. <u>See</u> Exhibit 2 (Rochester Police reports)

---

* Transcripts are identified by Trial (T), Session (Y), Date (D), and Page (x), i.e., TYD/x

(2)

8) Upon information and belief, Ms. Webber was released on $5,000 Personal Recognizance Bail on her felony ecstasy case and was scheduled to appear in Rochester District Court on April 30, 2001, at 8:00 a.m. Ms. Webber's subsequent felony drug arrest did not adversely affect her then-pending felony theft case.

9) On April 30, 2001, Ms. Webber appeared before the district court. Her case was scheduled for a Probable Cause Hearing for May 21, 2001, at 1:30 p.m. Immediately after Ms. Webber appeared in Court she was escorted by Captain David Kretchmar to meet with Special Agent Edward Bals. Ms. Webber provided Agent Bals with "information regarding the drug trafficking of [Mr.] Lopez." See Edward Bals' investigation report, Exhibit 3 (Initial debriefing of Ms. Webber)

10) On May 11, 2001, Ms. Webber orchestrated the first of a series of controlled-buys from Terri Tremblay and Gary Smith. See Exhibit 4.

11) I, Carlos Lopez, attest that on May 21, 2001, Ms. Webber failed to appear before the Rochester District Court for her Probable Cause Hearing. The court issued a bench warrant. On August 27, 2001, Ms. Webber's felony ecstasy case was bound over to Strafford County Superior Court, docket number: 02-S-641-BO.

12) On July 12, 2002, Deputy Clerk, Susan W. Ashley, contacted Strafford County Attorney, Janice K. Rundles, and requested, in writing, "whether or not [she] intend[s] to indict [Ms. Webber] for the offense charged." See Letter of Susan W. Ashley, Exhibit 4. On August 21, 2002, Strafford Superior Court Judge James D. O'Neill, III, issued an Order and dismissed Ms. Webber's felony ecstasy case for

(3)

lack of prosecution. A suppression hearing was not conducted in Ms. Webber's case. <u>See</u>, Exhibit 5 (Court documents)

13) I, Carlos Lopes, attest that Ms. Webber supplied perjurous testimony during my criminal trial regarding both the disposition of her felony ecstasy case and the benefits she received for working as a confidential source. Once Ms. Webber started working as a confidential source for the Somersworth Police Department, she no longer had to appear before the State of New Hampshire courts to answer her felony ecstasy case.

14) I, Carlos Lopez, attest that the government did not disclose to the defense Ms. Webber's arrest report or court documents. Further, Assistant United States Attorney (AUSA) Mark E. Howard[2] did not disclose to the United States District Court the government's "deal" made with Ms. Webber to secure her assistance and testimony; AUSA Mark E. Howard did not disclose to the court that Ms. Webber was the recipient of favorable treatment on her felony cases in Strafford County Superior Court due to her cooperation with law enforcement; nor did AUSA Mark E. Howard correct or advise the court of Ms. Webber's perjured testimony.

15) I, Carlos Lopez, attest that officers of the United States Government and officers of the State of New Hampshire, violated my Fifth and Fourteenth Amendment rights, respectively.

16) I, Carlos Lopez, attest that AUSA Mark E. Howard's pernicious acts of misrepresenting the government's witness to the United States District Court and withholding exculpatory and/or impeachment

---

[2] Mark E. Howard resigned from his position in the United States Attorney's Office. He presently runs a private practice in Manchester, New Hampshire.

vidence tainted my criminal trial.

17) As a result of Ms. Webber's perjury and government's due process violation, the United States District Court was not allowed to charge the jury with an instruction on how they should weigh Ms. Webber's testimony and credibility. The court addressed the jury about the §5K1.1 benefits and sentence reduction Terri Tremblay was going to receive in exchange for her cooperation and testimony. The court, however, did not address the benefits Ms. Webber received to secure her cooperation and testimony.

18) I, Carlos Lopez, respectfully request a complete disclosure of the documents in the possession or control of the government relating to both Jennifer Webber and my criminal case whether such materials are printed, written, recorded, transcribed, taped or however produced or reproduced including, but not limited to: any letter, correspondence, or communication of any sort between any employee(s) of the State of New Hampshire and employee(s) of the United States Government, sound recording, video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, and any amendment to the foregoing; facsimile, telex, telegram or cable; summary, report or record of telephone conversation, discussions, interview, meeting, conference, investigation, negotiation, act or activity; projection, work, paper, or draft; computer output or input; including e-mail, journal, and any and all other writings and recordings in whatever nature, whether signed or unsigned to transcribe; any and all other data compilation from which information can be obtained and translated into reasonable

(5)

usable form.

19) I, Carlos Lopez, have been sentenced by the United States District Court to a term of 300-months imprisonment. I maintain my 'actual' innocence towards the charges listed in my indictment.

20) The government violated my due process rights and committed fraud upon the United States District Court to secure my conviction. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); Brady v. Maryland, 373 U.S. 83 (1963).

**SIGNED ON THIS 9 DAY OF JUNE 2008, UNDER THE PENALTIES OF PERJURY.**

SWORN AND SUBSCRIBED BEFORE ME

<u>                                        </u>
NOTARY PUBLIC



(6)

## CERTIFICATE OF SERVICE

I, Carlos Lopez, hereby certify that a true copy of the foregoing, **AFFIDAVIT** has on this date been served upon Charlotte A. Abel, A.U.S.A, by depositing a copy in the U.S. mails, postage prepaid, addressed as follows:

Charlotte A. Abel, A.U.S.A
United States Attorney's Office
555 Fourth Street, NW
Washington, D.C. 20530

Dated: 6/9/08

(7)

STATE OF NEW HAMPSHIRE ARREST WARRANT

# SUPPORTING AFFIDAVIT For REQUEST To ISSUE ARREST WARRANT

## *State of New Hampshire*

# Rockingham SS Court          Portsmouth District

I, John W. Peracchi, of the New Hampshire Attorney General's Drug Task Force, being duly sworn, herewith make application for the issuance of an arrest warrant against the defendant:

Carlos Lopez of ▮▮▮▮▮▮ Street, Lawrence, Massachusettes.

I have information that a crime (or offense) has been committed by the defendant as follows: (describe source, facts indicating reliability and credibility of source and nature of information; if based on personal knowledge, so state).

## Possession a Controlled Drug -RSA 318-B: 2

1) During the month of May 2001, this affiant received information from a DEA Cooperating Source, hereinafter referred to as "CS" that Terri Tremblay DOB: ▮▮▮▮▮▮ of 19 Waverly Road, Rochester, NH was purchasing Crack Cocaine from Carlos Lopez, DOB: ▮▮▮▮▮▮▮▮▮▮ Street, Lawrence, MA. CS stated that Carlos Lopez is involved in the illegal distribution of crack cocaine in the area of Portsmouth, NH.

2) On June 20, 2001 this affiant made arrangements to meet CS and Tremblay at the Wendy's Restaurant parking lot at 2800 Lafayette Road, Portsmouth, NH at approximately 1930 hours to purchase crack cocaine from Tremblay.

3) On the above date, at approximately 1936 hours in the Wendy's Restaurant parking lot, this affiant met with a female subject who identified herself as "Terri." Terri informed this affiant that CS was on her way to the Wendy's Restaurant Parking lot in a separate vehicle.

4) On the above date, at approximately 1942 hours, this affiant met with CS. This affiant gave CS $700.00 in United States Currency to give to Tremblay to purchase crack cocaine for this affiant. (All money was documented by the DEA.) CS then met with Tremblay and both parties left the parking lot in one vehicle.

5) On the above date, at approximately 1954 hours, surveillance units observed a Gold Toyota Camary bearing Massachusetts registration ▮▮▮▮▮▮ arrive at the Beechstone

apartments at Portsmouth, NH.  Surveillance units observed Lopez operating the vehicle.  (From previous investigations surveillance units were familiar with Lopez. Lopez was also arrested on 09/24/98 for selling 100 grams of cocaine.)
Tremblay met with with Lopez inside his vehicle at 1957 hours.  Tremblay exited Lopez's vehicle at 2000 hours.

6) On the above date, at approximately 2010 hours, the CS and Tremblay arrived back at the Wendy's Restaurant parking lot.

7) CS met with this affiant and gave this affiant (7) seven rocks of crack cocaine.  CS stated that Tremblay told he/she that Tremblay received the crack cocaine in bulk quantity from Lopez and had to cut the rocks of crack cocaine herself.  Tremblay told CS that "He" (referring to this affiant) should be happy with the rocks she gave him.

8) This affiant later turned over all evidence to Special Agent Balls of the DEA.

John W. Peracchi
Detective NHAGDTF

Then personally appeared the above named Detective ~~Brandon Jarvis~~ and made oath that the foregoing affidavit by her subscribed is true.

Before me this ___25TH___ day of ___July___, 2001

Justice/Justice of the Peace

*Justice, Portsmouth District Court*

**EXHIBIT 1**

1       Q.    And, Ms. Webber, what name did she give you

2   of the person she was dealing with?

3       A.    She told me Carlos and Cyrus.

4       Q.    So those are two different names?

5       A.    For the same person, yeah.

6       Q.    She did not give you a full name?

7       A.    No.

8       Q.    And just so we're clear about this, did you

9   ever see this person named Cyrus or Carlos?

10      A.    No.

11      Q.    Now, did she indicate to you how much she

12  was paying per gram for crack from Cyrus or Carlos?

13      A.    Between sixty and a hundred dollars.

14      Q.    And why would the price vary so much, Ms.

15  Webber, do you know?

16      A.    I don't know.

17      Q.    So you went with her on a couple of

18  occasions down in Portsmouth; is that accurate?

19      A.    Yes.

20      Q.    And that's before you gave information to

21  the police?

22      A.    Yes.

23      Q.    Now, you saw a report just a moment ago that

24  refreshed your recollection of having met with the

25  police, and you thought that was in early May or so;

1   correct?

2        A.   Yes.

3        Q.   Why is it that you decided to provide this

4   information on your long-time friend Ms. Tremblay?

5        A.   I think mainly to get her to stop.

6        Q.   Did you also have some troubles yourself

7   with the law at that time?

8        A.   Yes.

9        Q.   And was there any indication to you by

10  police officers that you might benefit if you provided

11  information?

12       A.   No.

13       Q.   The charge that you were under at the time,

14  what ultimately happened to that?

15       A.   It got dismissed.

16       Q.   Now, was the dismissal because you

17  cooperated, or was it for some other reason?

18       A.   For some other reason.

19       Q.   Do you know what that other reason was?

20       A.   I think I do.  They searched my pocketbook

21  and they weren't supposed to.

22       Q.   So you think it was dismissed because they

23  had done a bad search?

24       A.   Yeah.

25       Q.   Now, you are still under a sentence from a

1    previous conviction; right?

2         A.    Yes.

3         Q.    And have you been offered any benefit as far

4    as that sentence goes for your cooperation here?

5         A.    No.

6         Q.    And do you expect it?

7         A.    No.

8         Q.    Okay.  Do you own a cell phone?

9         A.    Yes.

10        Q.    Did you have a cell phone in April and May

11   of 2001?

12        A.    Yes.

13        Q.    And was there a time when Terri Tremblay

14   used that cell phone to set up her deal?

15        A.    Yes.

16        Q.    Do you recall, first of all, the number that

17   she called to set up the deal?

18        A.    No.

19        Q.    Do you recall if she used any kind of

20   special number -- once she called the number, did she

21   have some kind of a code number that she punched in

22   the phone?

23        A.    Yes.

24        Q.    Do you remember what that was?

25        A.    004.

1      Q.   And I want to ask you as well, I notice

2  inside this package there's some plastic?

3      A.   Yes.

4      Q.   What is this little plastic for, do you

5  know?

6      A.   That's what they came in, and they were tied

7  in a knot, I believe.

8          MR. HOWARD:  Okay.  Now, Ms. Webber,

9  Attorney Soldati has some questions for you.

10          MR. SOLDATI:  Actually it will be Attorney

11  Jeffco.

12          THE COURT:  Mr. Jeffco.  I'm not sure you've

13  been introduced, Mr. Jeffco, actually.

14          MR. JEFFCO:  For the jury's purpose, my name

15  is Steve Jeffco and along with my partner, Lincoln

16  Soldati, we represent Carlos.

17                    CROSS-EXAMINATION

18  BY MR. JEFFCO:

19      Q.   Ms. Webber, I have several questions.  If I

20  understand you correctly, you've known Ms. Tremblay

21  for what, 17 years?

22      A.   Yes.

23      Q.   And I take it you consider yourself to be a

24  friend of Ms. Tremblay's; is that right?

25      A.   Yes.

1    Q.    And I understand that you got involved with

2    the police because you wanted to help your friend; is

3    that correct?

4    A.    Yes.

5    Q.    There was no deals; is that right?

6    A.    Yes.

7    Q.    In other words, you weren't in trouble and

8    didn't try to work off any charges or anything like

9    that, did you?

10    A.    I was in trouble, but I wasn't working off

11    anything.

12    Q.    Well, actually you were in trouble -- strike

13    that.  Would it be safe to say that '99 was a bad

14    year, that spring?

15    A.    I wouldn't call it bad.

16    Q.    Well, hadn't you been arrested?  Hadn't you

17    been indicted on April the 22nd, 1999, for a Class A

18    felony in Strafford County Superior Court?

19    A.    Yes, I was.

20    Q.    And that was for a theft offense; is that

21    correct?

22    A.    Yeah.

23    Q.    And Class A felony in superior court carries

24    a maximum sentence of seven and a half to fifteen

25    imprisonment; does it not?

1    A.    I don't know.

2         MR. JEFFCO:   May I approach the witness,
3    your Honor?

4         THE COURT:   Certainly.   Feel free.

5    Q.    Ma'am, I will show you a document that's
6    entitled, "Acknowledgment and Waiver of Rights Form"
7    for a felony and there's a signature on the back of
8    it.   Do you recognize that signature?

9    A.    Yes, that's mine.

10   Q.    And this form explains the maximum penalties
11   for a Class A felony; does it not?   In particular this
12   section here?

13   A.    I'm sure it does.

14   Q.    Let me ask this.   Can you read that to
15   yourself.

16        (Witness examined document.)

17   A.    Yeah.

18   Q.    Now, let me pose the question again.   Do you
19   recall what the maximum penalty is for a Class A
20   felony at the superior court level?

21   A.    Yes, I do now.

22   Q.    And what is that?

23   A.    Seven to fifteen years.

24   Q.    Now, that indictment came down April the
25   22nd, 1999; is that correct?

1    A.    Yes.

2    Q.    And after the indictment was handed down,

3  you were arraigned on it and entered a plea of not

4  guilty; is that correct?

5    A.    Yes.

6    Q.    And I understand that also in 1999, actually

7  a couple months prior to that, you were arrested in

8  Somersworth; is that correct?

9    A.    I don't recall.

10    Q.    February 10th, 1999, were you not arrested

11  in Somersworth for possession of Ecstasy?

12    A.    In 1999?

13    Q.    Yes.

14    A.    No.

15    Q.    I take that back.  The Ecstasy was March

16  also 2001; is that correct?

17    A.    Yes.

18    Q.    And that was by the Somersworth Police

19  Department; is that correct?

20    A.    No.

21    Q.    Who was the agency arresting?

22    A.    Rochester.

23    Q.    And it's your testimony that there was no

24  one approaching you relative to a deal?

25    A.    No.

69

1      Q.    And it's your testimony that your attorney
2  never had any contact with law enforcement about a
3  deal?

4      A.    Not that I know of, no.

5      Q.    And I understand that in September of 2001,
6  the indictment alleging the offense of theft was
7  disposed of via a guilty plea; is that correct?

8      A.    It was not disposed of.  I was on the
9  diversion program.

10     Q.    And were you ever convicted of that offense
11 or was it just diverted?

12     A.    I was convicted of it.

13     Q.    But you received no jail time; is that
14 correct?

15     A.    That's correct.  I have twelve months
16 suspended.

17     Q.    That's right.  Out of a possible seven and a
18 half to fifteen?

19     A.    Yeah.

20     Q.    And in September of 2001, no one from the
21 DEA, the Drug Task Force, or the Somersworth Police
22 Department intervened on your behalf, did they?

23     A.    No.

24     Q.    And I understand that the complaint or the
25 charge alleging the Ecstasy was formally dismissed in

1   2002; is that correct?

2       A.   I believe so.

3       Q.   And I understand that the reason that was

4   dismissed was because of some sort of faulty search or

5   something.  It had nothing to do with a deal; did it?

6       A.   That's correct.

7       Q.   And possession of Ecstasy by state law is

8   also a felony, isn't it?

9       A.   That's correct.

10      Q.   A Class A felony like the theft charge that

11  you were ultimately convicted of; is that right?

12      A.   Correct.

13      Q.   I understand according to your direct

14  testimony that you tried or used crack cocaine once,

15  and that was approximately two years prior to the

16  spring of 2001?

17      A.   I said I used it two years ago.

18      Q.   Two years from today's date or May of 2001?

19      A.   May of 2001.

20      Q.   So you used crack cocaine in 1999?

21      A.   That's correct.

22      Q.   And I understand that was on one occasion;

23  is that correct?

24      A.   I don't remember.

25      Q.   Well, your direct testimony was that you

1    used crack cocaine and you used it once?

2         A.    I don't believe I said once.

3         Q.    How many times did you use crack cocaine?

4         A.    I'm not sure.

5         Q.    Well, was it once or twice?  Was it a

6    hundred times?  What was it?

7         A.    I'm not sure.

8         Q.    Was it on a weekly basis?

9         A.    No.

10        Q.    Was it on a daily basis?

11        A.    No.

12        Q.    And in 1999 -- it was more than once, wasn't

13   it?

14        A.    I'm not sure.

15        Q.    Could it have been a dozen times or two

16   dozen times?

17        A.    I'm not sure.

18        Q.    And this crack cocaine, where were you

19   acquiring it from in 1999?

20        A.    From friends.

21        Q.    When you say from friends, what friend?  Was

22   it Terri Tremblay?

23        A.    No.

24        Q.    Was it Josh Hilliard?

25        A.    No.  I didn't know Josh then.

1      Q.    What friends were you acquiring crack

2   cocaine from?

3      A.    Just friends.

4      Q.    Do your close friends have names?

5            MR. HOWARD:  Judge, I will object.  It's not

6   relevant who they actually were.

7            THE COURT:  Objection overruled.

8      Q.    Do your friends have names?

9      A.    I don't remember.

10     Q.    So you don't remember how often you used

11  it.  You remember that you acquired it from friends,

12  but you don't recall their names; is that correct?

13     A.    Correct.

14     Q.    And how did you acquire it from friends?

15  Did you purchase it?

16     A.    No.

17     Q.    So these friends of yours would just stop by

18  and say, gee, I have a little crack cocaine for you,

19  something like that?

20     A.    Correct.

21     Q.    And how many different friends were there

22  that would just stop by your home and say, here, I

23  have a little crack cocaine for you today.

24     A.    Not many.

25     Q.    When you say not many, more than a dozen

```
 1  friends?

 2        A.    No.

 3        Q.    More than two friends?

 4        A.    A couple.

 5        Q.    What is a couple?

 6        A.    A couple is two.

 7        Q.    So these two friends whose names you cannot

 8  remember used to give you crack cocaine.  How many

 9  times you cannot remember; is that correct?

10        A.    Correct.

11        Q.    Now, when they would give you crack cocaine

12  as gifts, how many grams at a time were you getting?

13        A.    There wasn't any grams.  It was just social

14  friends hanging around.

15        Q.    Okay.  Would you give any other friends this

16  crack cocaine --

17        A.    No.

18        Q.    -- that you acquired?

19        A.    No.

20        Q.    Would you share it with other friends?

21        A.    They were sharing it with me.

22        Q.    But you would not share it with anyone else?

23        A.    There was nobody else to share it with.

24        Q.    Now, you bought cocaine or crack cocaine off

25  of Terri Tremblay; did you not?
```

```
 1        A.    Yeah.

 2        Q.    How many times did you buy crack off Terri

 3   Tremblay?

 4        A.    Twice.

 5        Q.    And when was that?

 6        A.    I don't know.  A long time ago.

 7        Q.    When you say a long time ago, let's keep it

 8   in perspective.  How long before May of 2001?

 9        A.    Three months, four months.

10        Q.    And you bought it twice I understand?

11        A.    Not for myself.

12        Q.    I take it you bought it for a friend?

13        A.    Yes.

14        Q.    And who was this friend?

15        A.    I'm not sure.  It was a friend of a friend.

16        Q.    So you bought this crack cocaine for a

17   friend of a friend?

18        A.    Correct.

19        Q.    And you don't recall this friend's name; is

20   that right?

21        A.    Correct.

22        Q.    And perhaps you recall what you paid for

23   this crack cocaine?

24        A.    A hundred dollars.

25        Q.    So in other words, there are two $100
```

```
1    transactions?

2         A.    Correct.

3         Q.    And under state law that's a felony; is it

4    not?

5         A.    I don't know.

6         Q.    Well, do you think it's against the law to

7    distribute crack cocaine at the state level?

8         A.    I wasn't distributing.

9         Q.    Well, did you give someone money?

10        A.    Yes.

11        Q.    Did you get cocaine -- crack cocaine in

12   exchange for it?

13        A.    Yes.

14        Q.    And did you give it to someone else?

15        A.    Yes.

16        Q.    And you would be shocked to know that's

17   illegal?

18        A.    I'm not here to talk about myself.

19              THE COURT:  You're here to answer the

20   questions that are put to you honestly and candidly as

21   best you can as you are sworn to do.

22        Q.    You were aware, were you not, that that's

23   against the law, isn't it?

24        A.    Yes.

25        Q.    Thank you.  And I presume that when you got
```

1    involved with the police, you told them about your

2    transgressions?

3        A.    No.

4        Q.    You never did?

5        A.    No.

6        Q.    Well, let me ask this.  How does one get

7    involved with the police?  In other words, did you go

8    to the Somersworth P.D. and say, I'm here to help my

9    friend?

10       A.    No.

11       Q.    How does it happen?

12       A.    It just happened.

13       Q.    Well, why don't you tell me just how it

14   happened in this case.

15       A.    It just happened.  I was already in contact

16   with them.

17       Q.    And who were you already in contact with?

18       A.    With the Somersworth Police Department.

19       Q.    When you say you were already in contact

20   with them, when did you first get in contact with

21   them?

22       A.    I'm not sure of the exact date that Captain

23   Kretchmar came to my house.

24       Q.    And did Captain Kretchmar come to your house

25   to go and wish you well?

```
 1        A.   No, he came to arrest my boyfriend.

 2        Q.   Okay.  So who was your boyfriend at the

 3   time?

 4        A.   Josh.

 5        Q.   Josh what?

 6        A.   Hilliard.

 7        Q.   And what was Josh Hilliard arrested for?

 8        A.   For distributing.

 9        Q.   Distributing what?

10        A.   Cocaine.

11        Q.   Crack cocaine?

12        A.   No, cocaine.

13        Q.   Just cocaine?

14        A.   Conspiracy.

15        Q.   Okay.  Conspiracy and distribution of

16   cocaine; is that correct?

17        A.   Um-hum.

18        Q.   Serious felony charges; is that right?

19        A.   Yeah.

20        Q.   And that's when I understand you met the

21   captain from Somersworth; is that correct?

22        A.   Correct.

23        Q.   And what went on was he offered you a way to

24   help Josh; is that correct?

25        A.   That's not correct.
```

1      Q.   So when he shows up you say, gee, I just

2  want to help law enforcement; is that right?

3      A.   Yep.

4      Q.   Was there any discussion about Josh's bail?

5      A.   No.

6      Q.   What was Josh's bail set at?

7      A.   50,000.

8      Q.   Cash or P.R.?

9      A.   P.R.

10     Q.   Okay.  And what you mean by 50,000 P.R.,

11 that means someone walks out the door at the time,

12 doesn't it?

13     A.   Yep.

14     Q.   And you had discussions with the Somersworth

15 police captain about you wanting to help prior to Josh

16 making bail; isn't that right?

17     A.   No, that's not right.

18     Q.   You had no conversations with him prior to

19 Josh making bail?

20     A.   That's right.

21     Q.   When did you have these conversations?

22     A.   It was after April.

23     Q.   It was after April?

24     A.   Um-hum.

25     Q.   Specifically when?

1          A.   I'm not sure of the date, but I know it was

2     after Josh.

3          Q.   Was it after Josh made bail?

4          A.   Yeah.

5          Q.   And there was no discussions about what the

6     charges against Josh would or would not be?

7          A.   Not with me.

8          Q.   Okay.  So there are no discussions with

9     you.  Were there discussions with Josh?

10         A.   I'm not sure what Josh discussed while he

11    wasn't with me.

12         Q.   Did you have an understanding if you helped

13    the police it would benefit Josh?

14         A.   No, I didn't.

15         Q.   Now, how's this start?  I understand that's

16    how you met the police, but after meeting the police,

17    how does one work for the police?

18         A.   I don't know.  It just happened.

19         Q.   Well, how did it happen?

20         A.   Because we talked and it just happened.  It

21    had nothing to do with Josh.

22         Q.   Whatever it had to do with, how did it

23    happen?

24         A.   It just happened.

25         Q.   When you say it just happened, all of a

1  sudden?

2       A.   It's almost three years ago.   I don't

3  recall.

4       Q.   All of a sudden the phone rings and says,

5  hey, Jen, you remember I met you when I arrested your

6  fiance.   I'd like you to go and wear a wire and sting

7  your best friend.   Is that what happened?

8       A.   She wasn't my best friend.

9       Q.   Your friend of 17 years; is that what

10 happened?   He just calls you up on the phone?

11      A.   She was hardly a friend.

12      Q.   So anyway, this person you knew for 17 years

13 who's not your best friend, hardly a friend, police

14 call you up, gee, would you like to wear a wire

15 today?   Is that what happened?

16      A.   No, that's not happened.

17      Q.   What happened?

18      A.   The conversation just came up; that's all.

19 It just came up.

20      Q.   When?

21      A.   Sometime after April.

22      Q.   And who was this conversation between?

23      A.   Me and one of the detectives.   I'm not

24 sure.   I don't recall his name.

25      Q.   Do you recall who this detective worked

1    for?  Was it Somersworth?

2        A.   Somersworth.

3        Q.   Local P.D.  And I understand that you and

4    this detective from the Somersworth P.D. talked about

5    you wearing a wire.  Is that what happened?

6        A.   No.  Not right off, no.

7        Q.   What was discussed?

8        A.   Just what I knew, and then after they asked

9    me if I would be willing to wear one, and I said yes.

10   And it wasn't a wire.  It was a pager.

11       Q.   Now, I understand that the first time that

12   you go to Terri Tremblay is in May; is that correct?

13       A.   I believe so.

14       Q.   Do you have any specific recollection?

15       A.   Of what?

16       Q.   When you went.

17       A.   In May?

18       Q.   Yes.

19       A.   The first time we went down?  When I was

20   working for the cops?

21       Q.   That's right.

22       A.   It was May 1st, wasn't it?

23       Q.   Beginning of May you went to Portsmouth; is

24   that correct?

25       A.   That's correct.

**EXHIBIT 2**

Docket #

01-1094

# The State of New Hampshire
## COMPLAINT

☐ DOMESTIC VIOLENCE RELATED

☐ VIOLATION    ☐ CLASS A MISDEMEANOR    ☒ FELONY
            ☐ CLASS B

YOU ARE HEREBY NOTIFIED TO APPEAR BEFORE SAID COURT
AT **08:00** O'CLOCK IN THE AM/PM ON **XXX 04/30 XX01 YR**
UNDER PENALTY OF LAW TO ANSWER TO A COMPLAINT
CHARGING YOU WITH THE FOLLOWING OFFENSE:
TO THE **ROCHESTER** COURT, COUNTY OF **STRAFFORD**

THE UNDERSIGNED COMPLAINS THAT: PLEASE PRINT

NAME **WEBBER**            **JENNIFER**        **L**
     Last Name           First Name          Mi

**17 MARKET ST B  SOMERSWORTH, NH 03878**
Address                    State                Zip

DOB **05/05/74**  OP. LIC.# **NH 05HSJ74052**

| | F | W | 5,0,5 | 1,2,0 | WRITE OUT: BLOND OR S | BLUE |
|---|---|---|---|---|---|---|
| | Sex | Race | Height | Weight | Color of Hair | Color of Eyes |

☐ COMM. VEH.    ☐ COMM. DR. LIC.    ☐ HAZ. MAT.

AT **HIGHLAND ST  EAST ROCHESTER, NH**
                    (Location)

ON THE **29** DAY OF **March** YR **XX01** at **4:55** **XXX** P.M.

or at in said county and state, did commit the offense of **POSSESSION OF**

**A CONTROL DRUG** contrary to RSA **318-B:2**

and the laws of New Hampshire for which the defendant should be held to
answer, in that the defendant did

**knowingly possess a controlled drug, contrary to RSA 318:B2, more commonly
known as Ecstasy.**

against the peace and dignity of the State.

☐ SERVED IN HAND

**PATROLMAN WILLIAM E BURKE, Rochester Police Department**
Complainant                                        Dept.

Personally appeared the above named complainant and made oath that the
above complaint by him/her subscribed is in his/her belief, true.

DATE **4/1/1/0/**

COURT COPY                                    Justice of the Peace

AOC 103A-045 7/00

02-S-641-BO

Rochester Police Department                    Page: 1

NARRATIVE FOR PATROLMAN WILLIAM E BURKE

Ref: 01-525-AR

03/29/2001 1950

On the above date at around 1645, I was behind a Ford Bronco II on Salmon Falls Road. We stopped at the stop light at the intersection of Salmon Falls Rd. and Highland St. As we were stopped I noticed that the truck had a broken windshield. I decided to pull the vehicle over to see if the vehicle was safe to drive on the street. I then activated my emergency lights and the truck pulled over just prior to the intersection of Highland Street and Eastern Ave.

I spoke to the operator of the vehicle, who was identified as Joshua ████. Joshua told me that something had hit the windshield a couple of days ago and when he came out this morning the crack had gone completely across his windshield. As I was speaking to Joshua I thought I could see a beer bottle in the rear compartment. I then asked the passenger who she was? She told me her name was Jennifer Webber. I asked her for some identification. She gave me a NH Non Driver Identification. On the Non Driver Identification the name stated she was Jennifer Hudgins.

I ran both Jennifer and Joshua through the spots system and they both came up as not wanted, and Joshua was a valid operator. I then called for another officer because I was curious as to who the passenger really was and I wanted to see about the bottle in the back seat area.

I returned to the truck and I spoke to Joshua and asked him if there was anything in the truck that I should be aware of. Joshua told me that there was a beer bottle in the back and it was still sealed. I told him that would be fine and asked him if I could search the vehicle. Joshua told me that I could. He and Jennifer exited the truck and I patted them down for their saftey and for mine. At that time Ofc. Mangum came to the scene and watched both of the subjects while I searched the truck. I found the beer bottle and it was still sealed in it's original container. I also found a steak knife in by the side of the seat. Joshua told me that the knife was his. I then found a black leather type purse on the floor by the back seat. I asked Jennifer if this was her purse? Jennifer told me that it was. I asked her if I could look in the purse and search it. Jennifer told me that I could. In the purse I noticed a plastic tupperwear type holder that had small pills in it. I noticed on a couple of the pills it had the logo "007" in them. I also noticed that the other pills in the container had the letter "E" branded or pressed into them. I recognized these logos as a common symbol that is branded or pressed into the drug more commonly known as Ecstasy. I asked Jennifer what the pills were. Jennifer told me that the pills were sweet tarts. I did not belive her and I gave the container to Ofc. Mangum. I then went back to the purse and found a baggie of a green vegetative substance in a plastic sandwich bag. The vegetative matter had an odor to it that I recognized as the substance more commonly known as Marijuana. This is an odor that I have come across on other arrests that have involved the drug, Marijuana and an odor that was demonstrated to me while at the New Hampshire PSTC.

I then looked over to Ofc. Mangum to tell him to place Jennifer under arrest and he was already handcuffing her. He then told me that she told him that the pills in the bottle were Ecstasy. Jennifer was placed in the back of my cruiser and the truck was searched again. Nothing else was found in the truck. I then gave Joshua a warning for the windshield and he was released from the scene. Joshua told me that he would come to the station to post bail for Jennifer.

I then transported Jennifer to the station and she was booked by me. Jennifer was photographed and

Rochester Police Department

NARRATIVE FOR PATROLMAN WILLIAM E BURKE

Ref: 01-525-AR

---

fingerprinted by me.  I checked Jennifer under both names on the probation/parole list and she was not present on the list.  Jennifer was read he Miranda rights and she told me that she wanted to talk to her lawyer.  I mentioned to Jennifer that she might want to talk to one of our Detectives or the Prosecutor about giving us some drug information.  I repeatedly told Jennifer that I could not make any promisees, but if she did cooperate the Prosecuting Attorney might want to discuss this with her and might be able to work out a deal with her before trial.  Jennifer told me that she would keep this in mind and she would talk to her lawyer.  Jennifer was bailed by Paul Ferland on 5000.00 P.R. Bail. Jennifer was given a court date of 04-30-01, at 0800, at the Rochester District Court.  Jennifer was then released at around 1820.

The drugs were then logged into evidence and placed by myself and Lt. Moore in the evidence room.

NOTHING FOLLOWS.

Rochester Police Department
Page: 1
Case 1:07-cv-02002-RMU    Document 18-2    Filed 06/13/2008    Page 29 of 48
NARRATIVE FOR PATROLMAN CHRISTOPHER MAZZEO

Ref: 01-525-AR

03/29/2001 1731

On the above date I assisted Officer Burke who made a traffic stop on Highland Street in East Rochester. Officer Burke requested a second unit because he was going to attempt to make a consent search of the vehicle. When I arrived there was a female and male standing to the rear of their vehicle. Officer Burke was on passengers side of the vehicle searching the vehicle so I stood behind the male and female. Officer Burke pulled out a purse and asked the female if this was her purse and she stated that it was. Officer Burke received verbal permission to look in the purse and the female stated he could look. Officer Burke then pulled out a plastic vile that contained many pills. When Officer Burke asked her what it was, she stated that it was tarts. Officer Burke handed me the vile and continued the search.

As I looked at the pills I noticed that they contained a designed on them. I asked her if it was tarts, and she stated that it was "ecstasy". She was handcuffed without incident and the cuffs were double locked and checked for tightness. She was then placed in the rear of Officer Burke's cruiser.

NOTHING FURTHER BY THIS OFFICER.

```
                 Arrest #: 01-525-AR
                 Call #: 01-9799
```

Date/Time Reported: 03/29/2001 @ 1646
Arrest Date/Time: 03/29/2001 @ 1655
Booking Date/Time: 03/29/2001 @ 1720
                TN #:
              Court: ROCHESTER DISTRICT COURT
         Court Date: 08/06/2001 @ 1330
  Reporting Officer: PATROLMAN WILLIAM BURKE
  Assisting Officer: PATROLMAN CHRISTOPHER MANGUM
    Booking Officer: PATROLMAN WILLIAM BURKE
  Approving Officer: DET. SGT. ANNE BRIDEAU

        Signature: _____





- WARNING -
THIS REPORT IS A SUMMARY, AND
MAY NOT NECESSARILY CONTAIN ALL
THE AVAILABLE INFORMATION KNOWN TO
THE REPORTING AND/OR ARRESTING OFFICER

| DEFENDANT(S) | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|
| 1  WEBBER, JENNIFER L | F | W | 26 | | |

                              HAIR: BLOND OR STRAWBERRY   EYES: BLUE
                         COMPLEXION: LIGHT
                              ETHNICITY: NOT HISPANIC

_____[APPEARANCE]_____

          GLASSES WORN: NO

TATTOOS: TAT L ANKL(ROSE), TAT R ANKL(SD), TAT R KNEE(PEACE SIGN)
         TAT RF ARM(BAND)

| ALIAS LAST NAME | FIRST NAME | MIDDLE NAME | SSN | DOB |
|---|---|---|---|---|
| WEBBER | JENNIFER | L | NOT AVAIL | NOT AVAIL |
| HUDGINS | JENNIFER | L | NOT AVAIL | NOT AVAIL |
| WEBBER | JENNIFER | | 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 | 05/05/1972 |

_____[FAMILY/EMPLOYMENT INFORMATION]_____

     MARITAL STATUS: DIVORCED
      SPOUSE'S NAME:
      FATHER'S NAME:
      MOTHER'S NAME:

        OCCUPATION: NONE

Arrest #: 01-525-AR
Call #: 01-9799

| DEFENDANT(S) | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|

[RIGHTS/BOOKING CHECKS]

RIGHTS ADVISED BY: PATROLMAN WILLIAM E BURKE          DATE/TIME:  03/29/2001 @ 1720
        PHONE USED: N
  ARRESTEE SECURED: N

      FINGERPRINTED: Y
      PHOTOGRAPHED: Y
     SUICIDE CHECK: Not Performed
           PERSONS: Federal
  NCIC VEHICLE CHECK: Not Performed
    INJURY OR ILLNESS: N

| OFFENSE(S) | A/D | STATE LAW | CLASS |
|---|---|---|---|

LOCATION TYPE:  Highway/Road/Alley/Street
HIGHLAND ST
EAST ROCHESTER NH 03868

1  POSSESSION OF A CONTROL DRUG          C     318-B        2
        SUSPECTED OF USING: Not Applicable
        CRIMINAL ACTIVITY: Possessing/Concealing
          BIAS AGAINST: No Bias

2  POSSESSION OF A CONTROL DRUG          C     318-B        2
        SUSPECTED OF USING: Not Applicable
        CRIMINAL ACTIVITY: Possessing/Concealing
          BIAS AGAINST: No Bias

| # PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|
| 1  JOSHUA L | | M | W | 28 | | |

| # DRUG(S) | PROPERTY # | STATUS |
|---|---|---|

1  Marijuana                              01-723-PR        Seized (Not Previously Stolen)
                                                            DATE: 03/29/2001
    QUANTITY: 1.000 (Not Available at This Time) VALUE: $20.00    ANALYSIS:
eized (Not Previously Stolen)                   LAB#:    011748
ave bean
      OWNER: WEBBER, JENNIFER L

2  Other Hallucinogens, ECSTACY, 2-007, 23-E   01-725-PR    Seized (Not Previously Stolen)
                                                            DATE: 03/29/2001
    QUANTITY: 25.000 (Dosage of Units/Items)  VALUE: $125.00    ANALYSIS:
eized (Not Previously Stolen)                   LAB#:    011748
ave bean
      OWNER: WEBBER, JENNIFER L

# State of New Hampshire

Strafford _____ County

Rochester _____ Court

322-3516 Tel. #

State v. ████████ D.O.B. 5/5/74    01-1094/1095 No.

Offense(s) Charged: Poss of marijuana
Hudcins
of notices

Police Dept. RPD

Date of Offense: 3/29/01

## BOND IN CRIMINAL CASE

Received of _____

████████████████

☐ **CASH BAIL/CORPORATE SURETY BAIL BOND**, to secure defendant's compliance with the Conditions of Bail written below.

\*        \*        \*

☒ **PERSONAL RECOGNIZANCE** The defendant agrees s/he is indebted to the State of New Hampshire in the amount of $ _____ Personal Recognizance Bail to secure defendant's compliance with the Conditions of Bail written below.

### CONDITIONS OF BAIL

1. The defendant shall appear in this court to answer this charge at ████████ on ████████████████████

2. The defendant shall appear in any New Hampshire Court to answer this charge when notified to report to the court.
3. The defendant immediately shall notify any New Hampshire Court in which this case is pending of any change of address.
4. The defendant shall keep the peace and be of good behavior.
5. Other:

   If the defendant complies with the Conditions of Bail, this obligation shall be null and void on final disposition of this charge.
   If the defendant does not comply with any condition(s) Cash Bail shall be forfeited to the State surety or surety and execution may issue against the defendant for Personal Recognizance and against the Corporate surety or surety. In addition, the court may order the arrest of the defendant. A.JLW

Date: 3/29/01

Time: 6:00

_____
BAIL COMMISSIONER/CLERK OF COURT

Bail Commissioner's fee $ 20.00

_____
DEFENDANT

Address 17B market St
Somersworth NH. 03878
692-4644

_____
CORPORATE SURETY or SURETY

Address _____

OC-110-245-2/86

COURT COPY

**BAIL BOND**

# The State of New Hampshire

## JUDICIAL BRANCH
### ORDERS AND CONDITIONS OF BAIL

Strafford _____ County          Rochester _____ Court

**STATE**

v.

Jennifer L Webber Hudson _____          DOB: 5/5/74

It is hereby ordered pending ☒ arraignment   ☐ trial   ☐ probable cause hearing   ☐ appeal that the above defendant:

I. A. ☒  Be released on $5,000 ___ personal recognizance and subject to conditions listed in Paragraph II and those conditions indicated in Paragraph III.

B. ☐  Be released on $_____ cash/surety bond subject to conditions listed in Paragraph II and those conditions indicated in Paragraph III.

C. ☐  Be detained to permit revocation of conditional release.

D. ☐  Be detained for not more than 72 hours to allow for filing of a probation violation.

II. DEFENDANT'S RELEASE IS SUBJECT TO THE CONDITIONS THAT:
   A.   DEFENDANT NOT COMMIT A FEDERAL, STATE OR LOCAL CRIME WHILE ON RELEASE.
   B.   DEFENDANT APPEAR AT ALL COURT PROCEEDINGS AS ORDERED.
   C.   DEFENDANT ADVISE THE COURT IN WRITING OF ALL CHANGES OF ADDRESS WITHIN 24 HOURS.

III. The court hereby determines that defendant's release under Paragraph I(A):
   ☐ will not reasonably assure the appearance of defendant as required.
   ☐ will endanger the safety of the defendant or of another person or the community.

By reason of such determination, the court imposes the following additional conditions that defendant: _____ by mail,
   1. ☐  shall have no contact with _____ telephone or otherwise, and is further ordered not to interfere with this person at their residence, school, or place of employment and additionally is ordered to refrain from going within _____ yards of where that person(s) may be.
      ☐ shall live at: _____
      ☐ shall not travel outside of _____
      ☐ travel restrictions: _____
   2. ☐  refrain from possessing a firearm, destructive device, dangerous weapon, or ammunition.
   3. ☐  refrain from excessive use of alcohol, and use of a narcotic drug or controlled substance as defined in RSA 318-B.
   4. ☐  comply with the following curfew: _____
   5. ☐  is ordered not to drive until defendant's license or privilege is restored by the Director of Motor Vehicles.
   6. ☐  report to arresting law enforcement agency or _____ as required.
   7. ☐  remain in the custody of _____, a responsible adult residing at _____, N.H., who agrees to supervise the defendant and to report any violation of a release condition to the court. The court has found that the above named adult has reasonably assured the court that the defendant will appear as required and will not pose a danger to the safety of any person in the community.
   8. ☐  Other: _____

IV. THE DEFENDANT IS HEREBY ADVISED THAT IN THE EVENT THE DEFENDANT VIOLATES ANY OF THE ABOVE CONDITIONS OF RELEASE, THE DEFENDANT MAY:
   A.   BE SUBJECT TO IMMEDIATE ARREST AND DETENTION.
   B.   BE SUBJECT TO IMPRISONMENT FOR CONTEMPT OF COURT.
   C.   BE SUBJECT TO IMMEDIATE REVOCATION OF RELEASE.
   D.   BE SUBJECT TO ADDITIONAL IMPRISONMENT OF 1 YEAR IF THE DEFENDANT COMMITS A MISDEMEANOR WHILE ON RELEASE.
   E.   BE SUBJECT TO ADDITIONAL IMPRISONMENT OF 7 YEARS IF DEFENDANT COMMITS A FELONY WHILE ON RELEASE.

So ordered this 29 day of March, 20 01.

Presiding Justice / Bail Commissioner _____

Defendant: Jennifer Webber _____

I hereby acknowledge receipt of the above release conditions, and the penalties notification on the reverse side of this form.

Surety _____

AOC-109-245 (01/00)

**EXHIBIT 3**

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|

5. By: S/A Edward Bals
At: Portsmouth POD

6. File Title

7. ☐ Closed  ☐ Requested Action Completed  ☐ Action Requested By:

8. Date Prepared
5/1/01

9. Other Officers: Capt. Kretschmar Somersworth PD

10. Report Re: Initial Debriefing of CS-

## DETAILS

## DRUG RELATED INFORMATION

1. Reference is made to all previous RIO under this case file and number.

2. On 4/30/01 a CS provide information regarding the drug trafficking of Carlos LOPEZ a.k.a. (CYRUS) in the Seacoast area of NH. CS advised that a Terry Trimly from Rochester NH is purchasing gram quantities of crack cocaine from LOPEZ at an apartment complex in Portsmouth, NH. CS. advised LOPEZ has access to crack cocaine at anytime. TRIMLY is paying between $85.00 to $100.00 dollars per gram.

3. CS advises LOPEZ is currently driving a new model Toyota Camry Gold in color with Massachusetts registration. CS further advised that TRIMLY contacts LOPEZ via beeper #(603) 561-0799 and places code 004 into the digital pager. The CS is willing to make a purchase of crack cocaine from LOPEZ.

## NON DRUG RELATED INFORMATION

Nothing at the present time.

## FINANCIAL INFORMATION

Nothing at the present time.

## INDEXING SECTION

| 11. Distribution: | 12. Signature (Agent) | 13. Date |
|---|---|---|
| Division NEFD | S/A Edward Bals  *Edward Bals* | 5/1/01 |
| District | 14. Approved (Name and Title) | 15. Date |
| Other SARI | RAC Billy Yout | 5/4/01 |

DEA Form -6
(Aug. 1994)
EB

DEA SENSITIVE
Drug Enforcement Administration

1-Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition dated 5/80 may be used.

# NEW HAMPSHIRE DRUG TASK FORCE
## (101) INITIAL INVESTIGATION REPORT

| 1 CASE NO.<br>TF-01-151A | 2 DATE OF REPORT:<br>03/29/01 |
|---|---|

**3. INVESTIGATING OFFICER/I.D.**
Kyle True 780

**4. LOCATION OF INCIDENT:**
Somersworth

| 5. TOWN OF CRIME:<br>Somersworth, NH | 6. TOWN CODE<br>0924 |
|---|---|

| 7. AT OR BETWEEN: | HOUR:<br>1730 | MONTH:<br>03 | DATE:<br>26 | YEAR:<br>2001 |
|---|---|---|---|---|
| AND: | HOUR:<br>1900 | MONTH:<br>03 | DATE:<br>26 | YEAR:<br>2001 |

**8. CRIME/RSA:**
N/A

**9. CRIME: (SECOND, IF ANY)/RSA:**

**10. VICTIM/ADDRESS/PHONE:**
State of New Hampshire, Concord, NH  (603) 271-3291

**11. TYPE OF PREMISES/CODE:**
Residence 80

**12. WEAPONS or TOOLS/CODE:**

**13. HOW ATTACKED: (M.O.)**
Assist the Drug Enforcement Administration

| 14. VEH.  YEAR: | 15. MAKE: | 16. MODEL: | 17. COLOR: | 18. REG: | 19. STATE: | 20 VIN: |
|---|---|---|---|---|---|---|
| N/A | | | | | | |

| 21. STATUS OF CRIME: | ACTIVE<br>☒ | CL. ARREST<br>☐ | X-CLEARED<br>☐ | UNFOUNDED<br>☐ |
|---|---|---|---|---|

| 22. STATUS OF CASE: | INVESTIGATION OPEN<br>☒ | INVESTIGATION CLOSED<br>☐ | 23. AGE OF OLDEST: |
|---|---|---|---|

| 24. NAME AND ADDRESS (OF ALL PERSONS CHARGED) | 25. CHARGE | DOB | RACE | SEX | AGE |
|---|---|---|---|---|---|
| JOSHUA HILLIARD<br>SOMERSWORTH, NH | | 03/07/73 | W | M | 29 |

On March 26, 2001, this investigator assisted the Drug Enforcement Administration with an ongoing investigation in Somersworth, NH.

Cite Continuation of Investigation Report for further details.

| APPROVED BY | 1 OF 2 PAGE | APPROVED ELECTRONICALLY/780<br>SIGNED/I.D. | 04/20/01  32<br>DATE |
|---|---|---|---|

# NEW HAMPSHIRE DRUG TASK FORCE
## (102) CONTINUATION OF INVESTIGATION REPORT

| 1. CASE NO. | 2. INVESTIGATING OFFICER | 3. I.D.NO. | 4. TOWN OF CRIME | 5. TN.CD. | 6. DATE OF REPORT |
|---|---|---|---|---|---|
| TF-01-151A | Det. Kyle True | 780 | Somersworth, NH | 0924 | 03/29/01 |

On March 26, 2001, this investigator and Det. Pike of the NH Drug Task Force participated in an ongoing investigation in Somersworth, NH. The target of this investigation is subject:

> JOSHUA HILLIARD
> DOB: 03/07/73
> SOMERSWORTH, NH

Det. Pike was assigned to outside surveillance. This investigator was assigned to outside surveillance and also to operate the KEL unit.

On this date, Special Agent Norman Houle of the Drug Enforcement Administration, sent a Drug Enforcement Administration confidential source into HILLIARD'S residence wearing a listening device to obtain information on an ongoing Drug Enforcement Administration investigation. Confidential source entered the residence and spent approximately 50 minutes inside the residence conversing with HILLIARD. This investigator recorded the conversation over the KEL unit.

After the investigation was over, this investigator downloaded a copy of the recording from disk to audio tape. The tape recording was given to Special Agent Houle of the Drug Enforcement Administration. The original recording remains at the Drug Task Force office.

| | | Signed | Date |
|---|---|---|---|
| Page of Pages<br>2    2 | | APPROVED ELECTRONICALLY | 04/20/01 |

**EXHIBIT 4**

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

**1. HOW OBTAINED (Check)**
☐ Lab. Seizure ☐ Money Flashed [X] Purchase ☐ Seizure ☐ Free Sample
☐ Internal Body Carry ☐ Other (Specify) ☐ Compliance Sample (Non-Criminal)   5/11/01

| 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|
| 5 | | |

**4a. WHERE OBTAINED (City, State/Country)**
Portsmouth NH

**4b. DATE OBTAINED**
See Remarks

**5. FILE TITLE**

**6a. REFERRING AGENCY (Name)**
N/A

**6b. REFERRAL**
☐ Case No. OR ☐ Seizure No.
No. N/A

**7. DATE PREPARED**
5/14/01

**8. GROUP NO.**
Portsmouth POD

| 9. Exhibit No. | 10. FDIN (8 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| # 6 | N/A | Crack Cocaine | four clear plastic baggies containing an off white rock substance | 25.0 ggm | 25.0 ggm | $400.0 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?** ☐ NO (included above) ☐ YES (If Yes, enter exhibit no. and describe original container fully)

**REMARKS:**
ON 5/11/01, ⬛⬛⬛⬛⬛⬛ purchased exhibit #6 from Terri Tremblay and Gary Smith on Roberts Ave, In Portsmouth for $400.00 OAF. This exhibit was stored in the Portsmouth POD. On 5/14/01 S/A Bals initialed, dated, labelled, and processed this Exhibit #6. A field test turned a positive reaction for cocaine witnessed by S/A Remick. On 5/14/01, this exhibit was turned over to S/A Remick who mailed this exhibit returned receipt requested.

**17. SUBMITTED BY SPECIAL AGENT (Signature)**
S/A Edward Bals   Edward Bals

**18. APPROVED BY (Signature & Title)**
RAC B. ⬛ Young

**LABORATORY EVIDENCE RECEIPT REPORT**

**19. NO. PACKAGES**

**20. RECEIVED FROM (Signature & Date)**
N30226 30 178

**21. Print or Type NAME and TITLE**

**SEAL** ☐ Broken [X] Unbroken
TT 6/29/01

**23. RECEIVED BY (Signature & Date)**
⬛⬛⬛ Palminteri 5/18/01

**24. Print or Type NAME and TITLE**
C S PALMINTERI
R32977

**LABORATORY REPORT**

**ANALYSIS SUMMARY AND REMARKS**

Exhibit #6 contains cocaine base
Gross wt: 26.3g
Net wt: 2.5g

| Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 6 | 142829 | cocaine base | 70 | % | | 1.7g | 2.2g |
| | | | | | | | |

**ANALYST (Signature)**
Stacey D. Lewton

**35. TITLE**
Forensic Chemist

**36. DATE COMPLETED**
6/29/01

**APPROVED BY (Signature & Date)**
Howard L. Dobler   7/3/0

**38. TITLE**
Laboratory Director

**39. LAB. LOCATION**
New York

Form - 7
(1995)   Previous edition dated 4/90 may be used until stock is exhausted

OFFICE OF

# CLERK OF SUPERIOR COURT
STRAFFORD COUNTY

GRIMES JUSTICE AND
ADMINISTRATION BUILDING
P.O. BOX 799
DOVER, NEW HAMPSHIRE
03821-0799

JULIE W. HOWARD, CLERK
SUSAN W. ASHLEY, DEPUTY CLERK
SUZANNE R. DOYLE, DEPUTY CLERK

(603) 742-3065

July 12, 2002

Janice K. Rundles, Esq.
Strafford County Attorney
P.O. Box 799
Dover, New Hampshire 03821-0799

Re: **Boundover on Jennifer L. Webber**
**Docket Number: 02-S-641-BO**

Dear Attorney Rundles:

We have recently opened a file on the enclosed boundover from the Rochester District Court on the above-referenced individual which we received on 9/7/01. Please indicate, in writing, whether or not you intend to indict this individual for the offense charged or a similar offense. If we do not hear from you within **30 days**, the case will be dismissed without prejudice for lack of prosecution.

Thank you for your attention.

Very truly yours,

Susan W. Ashley
Deputy Clerk

SWA/jsm

2

**EXHIBIT 5**

# State of New Hampshire

STRAFFORD _____ County

ROCHESTER _____ Court

332.3150 _____ Tel. #

State v. ▮▮▮▮▮▮▮▮▮▮▮▮    D.O.B. S-5-74    01-CR-1094 No.

Offense(s) Charged: _____

*possession of controlled drug*

Police Dept. *Rochester*

Date of Offense: 3-29-01

## BOND IN CRIMINAL CASE

Received of _____

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**CASH BAIL / CORPORATE SURETY BAIL BOND** to secure defendant's compliance with the Conditions of Bail written below.

\*        \*        \*

**PERSONAL RECOGNIZANCE** The defendant agrees s/he is indebted to the State of New Hampshire in the amount of $ *500.00* Personal Recognizance Bail to secure defendant's compliance with the Conditions of Bail written below.

## CONDITIONS OF BAIL

1. The defendant shall appear in this court to answer this charge at ▮▮▮▮▮▮▮▮ on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. The defendant shall appear in any New Hampshire Court to answer this charge when notified to report to the court.

3. The defendant immediately shall notify any New Hampshire Court in which this case is pending of any change of address.

4. The defendant shall keep the peace and be of good behavior.

5. Other: *See Attached Bail Conditions;*

   If the defendant complies with the Conditions of Bail, this obligation shall be null and void on final disposition of this charge.

   If the defendant does not comply with any condition(s) Cash Bail shall be forfeited to the State surety or surety and execution may issue against the defendant for Personal Recognizance and against the Corporate surety or surety. In addition, the court may order the arrest of the defendant.

Date: 4-30-01

Time: 10:10 am

*Carol A. Hatch*
BAIL COMMISSIONER / CLERK OF COURT

Bail Commissioner's fee $ _____

DEFENDANT

Address *17 x3 market St.*
*Somersworth NH, 038>8*

CORPORATE SURETY or SURETY

Address _____

**BAIL BOND**

# The State of New Hampshire

## JUDICIAL BRANCH
### ORDERS AND CONDITIONS OF BAIL

_Strafford_ County    _Rochester_ Court

**STATE**    Docket(s) _01CR1094_

v.

_JENNIFER L WEBBER_ DOB: _____

It is hereby ordered pending ☐ arraignment ☒ trial ☒ probable cause hearing ☐ appeal that the above defendant:

I. A. ☒ Be released on $ _4000_ personal recognizance and subject to conditions listed in Paragraph II and those conditions indicated in Paragraph III.

B. ☐ Be released on $_____ cash/surety bond subject to conditions listed in Paragraph II and those conditions indicated in Paragraph III.

C. ☐ Be detained to permit revocation of conditional release.

D. ☐ Be detained for not more than 72 hours to allow for filing of a probation violation.

II. DEFENDANT'S RELEASE IS SUBJECT TO THE CONDITIONS THAT:
A. DEFENDANT NOT COMMIT A FEDERAL, STATE OR LOCAL CRIME WHILE ON RELEASE.
B. DEFENDANT APPEAR AT ALL COURT PROCEEDINGS AS ORDERED.
C. DEFENDANT ADVISE THE COURT IN WRITING OF ALL CHANGES OF ADDRESS WITHIN 24 HOURS.

III. The court hereby determines that defendant's release under Paragraph I(A):
☐ will not reasonably assure the appearance of defendant as required.
☐ will endanger the safety of the defendant or of another person or the community.

By reason of such determination, the court imposes the following additional conditions that defendant:
1. ☐ shall have no contact with _____ _____ by mail, telephone or otherwise, and is further ordered not to interfere with this person at their residence, school, or place of employment and additionally is ordered to refrain from going within _____ yards of where that person(s) may be.
☐ shall live at: _____
☐ shall not travel outside of _____
☐ travel restrictions: _____
_____

2. ☐ refrain from possessing a firearm, destructive device, dangerous weapon, or ammunition.
3. ☐ refrain from excessive use of alcohol, and use of a narcotic drug or controlled substance as defined in RSA 318-B.
4. ☐ comply with the following curfew: _____
5. ☐ is ordered not to drive until defendant's license or privilege is restored by the Director of Motor Vehicles.
6. ☐ report to arresting law enforcement agency or _____ as required.
7. ☐ remain in the custody of _____, a responsible adult residing at _____ _____, N.H., who agrees to supervise the defendant and to report any violation of a release condition to the court. The court has found that the above named adult has reasonably assured the court that the defendant will appear as required and will not pose a danger to the safety of any person in the community.
8. ☐ Other: _____
_____
_____
_____

IV. THE DEFENDANT IS HEREBY ADVISED THAT IN THE EVENT THE DEFENDANT VIOLATES ANY OF THE ABOVE CONDITIONS OF RELEASE, THE DEFENDANT MAY:
A. BE SUBJECT TO IMMEDIATE ARREST AND DETENTION.
B. BE SUBJECT TO IMPRISONMENT FOR CONTEMPT OF COURT.
C. BE SUBJECT TO IMMEDIATE REVOCATION OF RELEASE.
D. BE SUBJECT TO ADDITIONAL IMPRISONMENT OF 1 YEAR IF THE DEFENDANT COMMITS A MISDEMEANOR WHILE ON RELEASE.
E. BE SUBJECT TO ADDITIONAL IMPRISONMENT OF 7 YEARS IF DEFENDANT COMMITS A FELONY WHILE ON RELEASE.

So ordered this _30_ day of _APRIL_, 20_01_.

FRANKLIN C. JONES, JUSTICE

Presiding Justice / Bail Commissioner _Webber_
Defendant: _Jennifer Webber_

I hereby acknowledge receipt of the above release conditions, and the penalties notification on the reverse side of this form.

Surety _____

AOC-109-245 (01/00)

# The State of New Hampshire

## JUDICIAL BRANCH
### ORDERS AND CONDITIONS OF BAIL

_Strafford_ County       _Rochester_ Court

**STATE**    Docket(s) _01 CR 1095_

v.

_JENNIFER WEBBER_    DOB: _____

It is hereby ordered pending ☐ arraignment ☒ trial ☐ probable cause hearing ☐ appeal that the above defendant:

I. A. ☒ Be released on $ _100_ personal recognizance and subject to conditions listed in Paragraph II and those conditions indicated in Paragraph III.

B. ☐ Be released on $_____ cash/surety bond subject to conditions listed in Paragraph II and those conditions indicated in Paragraph III.

C. ☐ Be detained to permit revocation of conditional release.

D. ☐ Be detained for not more than 72 hours to allow for filing of a probation violation.

II. DEFENDANT'S RELEASE IS SUBJECT TO THE CONDITIONS THAT:
A. DEFENDANT NOT COMMIT A FEDERAL, STATE OR LOCAL CRIME WHILE ON RELEASE.
B. DEFENDANT APPEAR AT ALL COURT PROCEEDINGS AS ORDERED.
C. DEFENDANT ADVISE THE COURT IN WRITING OF ALL CHANGES OF ADDRESS WITHIN 24 HOURS.

III. The court hereby determines that defendant's release under Paragraph I(A):
☐ will not reasonably assure the appearance of defendant as required.
☐ will endanger the safety of the defendant or of another person or the community.

By reason of such determination, the court imposes the following additional conditions that defendant:
1. ☐ shall have no contact with _____ _____ by mail, telephone or otherwise, and is further ordered not to interfere with this person at their residence, school, or place of employment and additionally is ordered to refrain from going within _____ yards of where that person(s) may be.
☐ shall live at: _____
☐ shall not travel outside of _____
☐ travel restrictions: _____

2. ☐ refrain from possessing a firearm, destructive device, dangerous weapon, or ammunition.
3. ☐ refrain from excessive use of alcohol, and use of a narcotic drug or controlled substance as defined in RSA 318-B.
4. ☐ comply with the following curfew: _____
5. ☐ is ordered not to drive until defendant's license or privilege is restored by the Director of Motor Vehicles.
6. ☐ report to arresting law enforcement agency or _____ as required.
7. ☐ remain in the custody of _____, a responsible adult residing at _____ , N.H., who agrees to supervise the defendant and to report any violation of a release condition to the court. The court has found that the above named adult has reasonably assured the court that the defendant will appear as required and will not pose a danger to the safety of any person in the community.
8. ☐ Other: _____

IV. THE DEFENDANT IS HEREBY ADVISED THAT IN THE EVENT THE DEFENDANT VIOLATES ANY OF THE ABOVE CONDITIONS OF RELEASE, THE DEFENDANT MAY:
A. BE SUBJECT TO IMMEDIATE ARREST AND DETENTION.
B. BE SUBJECT TO IMPRISONMENT FOR CONTEMPT OF COURT.
C. BE SUBJECT TO IMMEDIATE REVOCATION OF RELEASE.
D. BE SUBJECT TO ADDITIONAL IMPRISONMENT OF 1 YEAR IF THE DEFENDANT COMMITS A MISDEMEANOR WHILE ON RELEASE.
E. BE SUBJECT TO ADDITIONAL IMPRISONMENT OF 7 YEARS IF DEFENDANT COMMITS A FELONY WHILE ON RELEASE.

So ordered this _31_ day of _April_, 20__    FRANKLIN C. JONES, JUSTICE

Presiding Justice / Bail Commissioner

I hereby acknowledge receipt of the above release conditions, and the penalties notification on the reverse side of this form.    Defendant: _Jennifer Webber_

Surety _____

AOC-109-245 (01/00)

PK 5/21/01 @ 1:30

TRIAL SCHEDULED ............. 5/21 .... at ..........
Continued from ............ to ......... at .............. by ..............
Continued from ............ to ......... at .............. by ..............
TRIAL HELD
Bail: ☐ PR$ ........ ☐ Cash$ ....... ☐ Surety$ ....... ☐ Committed
      ☐ Defendant advised of constitutional rights.    ☐ Waived counsel.
      ☐ Appearance of ................................... for defendant
      ☐ Assignment of ................................... for defendant
Nol Prossed by .............................................. date ..............
PLEA: ☐ Guilty  ☐ Not Guilty  ☐ Nolo Contendere  ☑ No Plea
      ☐ Change Plea To:   ☐ Nolo   ☐ Guilty
      ☐ Not Guilty  ☐ Negotiated Plea date ..............
FINDING: ☐ Guilty  ☐ Not Guilty  ☐ Dismissed
SENTENCE:
☐ Fine of $ ....... amt. suspended $ ........ PA $ ........ ☐ PA Susp.
☐ Commitment to House of Correction for .......... days ........ months
      ☐ Suspended ....... days ....... months
☐ Commitment suspended upon payment of $ ....... fine
☐ Commitment suspended (see conditions below)
☐ Commitment to mandatory 10 consecutive 24-hour periods: 3 at the
      House of Correction; 7 at the multiple DWI offender intervention
      detention centera
☐ Commitment to ........... consecutive 24-hour periods (mandatory not
      less than 30) at the House of Correction. Defendant shall complete at
      own expense a 28-day treatment program before license privileges may
      be restored.
☐ Conditional Discharge after ...... months  ☐ Unconditional Discharge
☐ Ordered  ☐ Recommended Defendant's license (rights) to operate
      motor vehicle be  ☐ suspended  ☐ revoked for a period of
      .......... days ........... months .......... years.
☐ Defendant placed on Probation for ...............................
☐ Case continued for sentence  ☐ Complaint placed on file  ☐ with
      ☐ without finding.
☒ Defendant failed to appear.  ☐ Bail forfeited $ ....... J
☒ Bench warrant to issue 5/21/01 ......... New Bail $ 2000 CASH
☐ Bail to be determined by Bail Commissioner $. to issue 5-22-01
☐ Bail Set By Court ......... PR/CASH/SURETY

FRANKLIN C. JONES, JUSTICE

☐ APPEAL: ........................................  ☐ Bail $ ....... ☐ Committed
☐ PROBABLE CAUSE: 8/27/01  ☒ Bail $ 5000 ☐ Committed
      ☐ Hearing Waived

# State of New Hampshire

Strafford _____ County

Rochester _____ Court

332- 3516 Tel. #

State v. ~~[redacted]~~    D.O.B. 5-5-74    01-1094 _____ No.

Offense(s) Charged: _____

Poss Drug

Police Dept. _Rochester_

Date of Offense: 3-29-01

## BOND IN CRIMINAL CASE

Amount $ ~~[redacted]~~

Received of _____

**CASH BAIL / CORPORATE SURETY BAIL BOND** to secure defendant's compliance with the Conditions of Bail written below.

\*          \*          \*

**PERSONAL RECOGNIZANCE** The defendant agrees s/he is indebted to the State of New Hampshire in the amount of $500.00 Personal Recognizance Bail to secure defendant's compliance with the Conditions of Bail written below.

## CONDITIONS OF BAIL

1. The defendant shall appear in this court to answer this charge at _____ M on _Bound over to Superior Court_

2. The defendant shall appear in any New Hampshire Court to answer this charge when notified to report to the court.
3. The defendant immediately shall notify any New Hampshire Court in which this case is pending of any change of address.
4. The defendant shall keep the peace and be of good behavior.
5. Other:

If the defendant complies with the Conditions of Bail, this obligation shall be null and void on final disposition of this charge.

If the defendant does not comply with any condition(s) Cash Bail shall be forfeited to the State surety or surety and execution may issue against the defendant for Personal Recognizance and against the Corporate surety or surety. In addition, the court may order the arrest of the defendant.

Date: 8-27-01

Time: 1:50 pm

_Carol O'Hara_
BAIL COMMISSIONER/CLERK OF COURT

DEFENDANT _Jennifer Webster_

Address _MB Market St. Somersworth NH 03878_

Bail Commissioner's fee $ _____

CORPORATE SURETY or SURETY _____

Address _____

**BAIL BOND**

THE STATE OF NEW HAMPSHIRE

STRAFFORD COUNTY                                    SUPERIOR COURT

The State of New Hampshire

v.

JENNIFER L. WEBBER

Docket Number:  02-S-0641-BO

**ORDER**

On 9/7/01, the above-captioned defendant was bound over to this Court from the District Court for trial.  To date, the defendant has not been indicted.  This case is dismissed without prejudice for lack of prosecution and the cash bail or corporate surety bond, as applicable, is released.

_____
Date  8/21/0~

_____
Presiding Justice

James D. O'Neill, Iii
Presiding Justice

# The State of New Hampshire

**Strafford County**             **Superior Court**             **No. 02-S-0641-BO**

## RETURN FROM SUPERIOR COURT

Name: JENNIFER L. WEBBER, 17 MARKET STREET, SOMERSWORTH, NH          DOB: 5/5/74

☐ Indictment   ☐ Waiver   ☐ Information   ■ Complaint

Offense: POSS. OF A CONTROLLED DRUG   RSA: 318-B:2

Date: 3/29/01

Disposition:   ☐ Not Guilty   ☐ Nol Pros        ☐ Remand
               ☐ Annulled     ■ Dismissed

T/N: N/A

Date:  8/21/02

By:   ■ Judge   ☐ Jury   ☐ Prosecutor   ☐ Defendant

Name of Judge : Hon. James D. O'Neill, III

c:   ■ State Police          ■ Dept. of Corr.          ■ Defendant
     ■ Pros. Attorney        ■ Layne Lohr, Esq.        ■ Rochester Dist. CT
                                                        (RE: 01-CR-1094)

**DISPOSITION/MITTIMUS**